Present:   All the Justices

ALFRED DEARING, JR.

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 982401              January 14, 2000

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The primary issues in this appeal are whether a circuit court violated a criminal defendant's federal constitutional right to confrontation by admitting in evidence a co-defendant's confession and, if so, whether such error was harmless beyond a reasonable doubt.

I.

Alfred Lovell Dearing, Jr., was indicted by a grand jury in Alexandria for the robbery of Andre Moore and use of a firearm during the commission of a robbery.  He was tried jointly with Leroy Vernoise Dorsey, a co-defendant who participated in the robbery.  At the conclusion of a bench trial, the Circuit Court of the City of Alexandria convicted Dearing of the charged crimes and sentenced him to a term of ten years imprisonment, with six years suspended, for the robbery conviction and three years imprisonment for the firearm conviction.  After the Court of Appeals denied Dearing's petition for appeal, we awarded Dearing an appeal.

II.

Applying well-established principles of appellate review, we must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party in the circuit court.  Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991).

On August 7, 1997, between 12:30 and 1:00 a.m., as Andre Moore was walking on Seminary Road in Alexandria, he observed a white four-door Honda Civic automobile with Maryland license plates.  Two people were in the car, which traveled past Moore.  The car stopped briefly.  Moore observed that the car's right taillight "was out."  Even though Moore could not see the face of the driver of the car, Moore "could tell [that the driver] had on a hat turned backwards."  The other man was seated on the passenger side of the car.

Suddenly, Moore saw Dearing standing on the opposite side of Seminary Road.  Moore was able to see Dearing's face clearly because Dearing was standing under a street light.  Dearing, who had a gun in his hand, "motioned" with his finger towards Moore.  Dearing "raised the gun up," "cocked the gun [and] started walking across the street."

Moore "emptied [his] pocket[s]" and "dropped to the ground."  Dearing walked over to Moore, cursed at him, and directed him to "get up, get up."  Moore stood up, and as Dearing pointed the pistol, Moore stated, "I don't have

2

nothing.  I don't have nothing. . . . Don't kill me.  Don't kill me."  Dearing checked Moore's pockets, took his wallet, and told Moore "[w]elcome to D.C.  Welcome to D.C."  Dearing took three one dollar bills from Moore.

Dearing walked across the street and got into the Honda Civic.  Dearing, who was a passenger in the Honda Civic, "yelled out the window" and laughed at Moore as the two men in the car rode away.

After the robbery, Moore continued to walk on Seminary Road.  The men who had robbed Moore minutes earlier, returned in the Honda Civic.  Dearing opened a car door, "hopped out of the car," and accused Moore of concealing money from the robbers.  Moore "immediately dropped to the ground."  Dearing kicked Moore and stated, "[h]e's lying.  He's lying.  He ain't walking this late at night.  Got more than $3 on him.  He's lying.  He's lying."  When a driver of another vehicle traveling on Seminary Road approached the men, Dearing ran back to the Honda Civic, and Dearing and the driver fled.

Sergeant Joshua Paige, an employee with the Defense Protective Service Police who was driving a van about 1:00 a.m., observed Moore lying in the street.  Sergeant Paige assisted Moore and contacted the Alexandria Police Department.  A police dispatcher issued an "area lookout" to various jurisdictions in northern Virginia and requested that they

3

"lookout" for a white, four-door Honda Civic bearing Maryland license plates, which had a broken rear taillight and which was occupied by two males.

Officer Larry Agne, an Alexandria police officer, went to the robbery scene to assist Moore. When Officer Agne arrived at the scene of the robbery, Moore provided him with a description of the assailants and their car. Moore told Officer Agne that the assailants were traveling in a white Honda Civic bearing Maryland license tags. Moore stated that the driver of the car wore a baseball cap which was "on backwards." The person who robbed Moore was armed with a dark-colored semi-automatic pistol, and was wearing a gray tee-shirt, baggy blue pants, "some kind of necklace," and brown or tan work boots.

Shortly after 1:00 a.m. that morning, James Wassom, a police officer with Arlington County, along with several other police officers, had been following a white, four-door Honda Civic because that car had been situated "the wrong way" in a parking lot, and the car's lights were turned off. Additionally, one occupant left the car, approached another individual, and then ran back to the car. After Officer Wassom followed the car for about 30 minutes, he learned that the car he had been following matched the description of the car that had been used in the robbery of Moore. The officers

4

followed the car from Arlington County into Washington, D.C., and then back into Arlington County.

Several police officers, in at least three unmarked police cars, stopped the Honda Civic. At that time, Dearing was driving the car, and Dorsey was in the passenger seat. The police officers removed the men from the car and searched them. Dearing had a five dollar bill and three one dollar bills in his pockets. He was wearing navy blue sweatpants, a gray tee-shirt, and two gold necklaces. When Officer Wassom read Dearing his Miranda rights, Dearing stated, "this was the first time that he had been in Virginia that night."

Officer Agne took Moore to the location in Arlington County where the police officers had apprehended Dearing and Dorsey. Moore was unable to identify Dorsey. Moore identified Dearing as the man who robbed him. Moore stated, "[t]hat's him. That's the guy that robbed me, but he's got different pants on."

Paul Larson, a detective with the Arlington County Police Department, interviewed Dorsey. According to Detective Larson, Dorsey stated "that he and his cousin, Mr. Dearing, had come into Virginia from Maryland in order to rob somebody. They drove around, saw a man walking down the street. . . . Mr. Dearing pointed a black handgun at him, at the victim, and took a small amount of money, which Mr. Dorsey believed to be

5

five one-dollar bills.  Then they left the victim there and drove around some more."  Detective Larson wrote the statement in his handwriting, and Dorsey signed the statement.

Later that morning, Larson searched the area where the defendants had traveled and found a semi-automatic pistol.  At trial, Moore testified that the pistol that Larson found appeared to be the same pistol that Dearing used during the robbery.

### III.

Code § 19.2-262.1 states:

> "On motion of the Commonwealth, for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant.  If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires."

The defendant contends that the circuit court erred by granting the Commonwealth's motion for a joint trial because the Commonwealth failed to establish good cause required by Code § 19.2-262.1.  The defendant also claims that he was prejudiced because he could not compel his co-defendant, Dorsey, to testify as a witness in a joint trial.  The defendant's contentions are without merit.

6

Code § 19.2-262.1 requires the circuit court, upon a showing of good cause, to order joint trials for persons charged with participating in contemporaneous and related acts or occurrences. Here, the defendant and Dorsey were charged with participating in contemporaneous acts. The Commonwealth demonstrated good cause for the joinder of the defendants' trials because the trials required the presence of numerous witnesses who would have had to appear at two separate trials had the motion been denied. Moreover, the record is devoid of any evidence of any actual prejudice to the defendant.

The defendant claims that he would have compelled Dorsey to testify if the defendants had been tried separately. Continuing, the defendant says that his right under the Sixth Amendment to the federal Constitution "to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . " was violated by the joint trial. The defendant's arguments are meritless. The defendant had no right to compel Dorsey, his co-defendant, to testify in either a joint trial or a separate trial if Dorsey elected to invoke his right against self-incrimination guaranteed by the Fifth Amendment to the federal Constitution. See United States v. Apfelbaum, 445 U.S. 115, 126 (1980) (absent grant of immunity, witness has privilege against

7

compulsory self-incrimination); see also Bruton v. United States, 391 U.S. 123 (1968).

IV.

A.

The defendant asserts that the judgment confirming his convictions must be reversed because his co-defendant's statement was improperly admitted in evidence against the defendant, thereby violating his right to confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. The Commonwealth responds that the statement against the defendant was admissible and any error that the circuit court committed should be deemed harmless beyond a reasonable doubt.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a criminal prosecution the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400, 403-06 (1965). The United States Supreme Court has stated that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990).

The Supreme Court in Lilly v. Virginia, ___ U.S. ___, ___, 119 S.Ct. 1887, 1894 (1999), held that the admission in evidence of an accomplice's confession against a defendant violates the defendant's right to confrontation if the confession does not fall within a firmly rooted hearsay exception or contain particularized guarantees of trustworthiness such that the adversarial testing of the statement would be expected to add little, if anything, to the statement's reliability.  Here, we cannot conclude that Dorsey's confession contained particularized guarantees of trustworthiness or that the statement was within a firmly rooted hearsay exception for the Confrontation Clause as discussed by the Supreme Court in Lilly.  Therefore, we hold that the circuit court erred by admitting Dorsey's statement in evidence.  Thus, we must consider whether this error was harmless beyond a reasonable doubt.

The Supreme Court, in Chapman v. California, 386 U.S. 18, 24 (1967), held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  As the Supreme Court stated in Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986), "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless

9

beyond a reasonable doubt."  See Neder v. United States, ___ U.S. ___, ___, 119 S.Ct. 1827, 1837 (1999).

A court, when determining whether federal constitutional error is harmless, must consider several factors, including the importance of the tainted evidence in the prosecution's case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and, of course, the overall strength of the prosecution's case.  Van Arsdall, 475 U.S. at 684; see also Lilly v. Commonwealth, 258 Va. 548, ___, ___ S.E.2d ___, ___ (1999); Schneble v. Florida, 405 U.S. 427, 432 (1972); Harrington v. California, 395 U.S. 250, 254 (1969).

Applying the aforementioned principles, we hold that the Confrontation Clause error in this case was harmless beyond a reasonable doubt.  Moore, who was able to see the defendant's face about five to seven minutes during their first encounter, testified unequivocally that the defendant was the man who robbed him.  Moore was also able to observe the defendant during the second encounter.  Moore identified the defendant as the perpetrator of the crimes within an hour of the robbery.  When the defendant was apprehended, he was driving the same car that the defendant and Dorsey used during the robbery.  The defendant was wearing a necklace described by Moore, and the co-defendant who was in the car when the police

apprehended the defendants had a baseball cap in his possession. The robber took three one dollar bills from Moore, and when the defendant was apprehended, he had three one dollar bills on his person. Moore testified that a gun found by the police officers looked like the gun that the defendant used to rob him.

B.

The defendant's argument that the evidence was not sufficient to support the convictions for robbery and use of a firearm to commit robbery is without merit. The facts summarized in section IV.A. of this opinion are more than sufficient to support the convictions.

V.

Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.