COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Lemons
Argued at Chesapeake, Virginia


DENNIE LEE RANKINS, S/K/A
 DENNIE LEE RANKINS, JR.
                                           OPINION BY
v.   Record No. 0066-99-1         JUDGE LARRY G. ELDER
                                        JANUARY 27, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    Wilford Taylor, Jr., Judge

            Wade A. Bowie (Joseph M. DuRant; Cumming,
            Hatchett & Jordan, on briefs), for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Dennie Lee Rankins (appellant) appeals from his bench trial

convictions for malicious wounding and use of a firearm in the

commission of a malicious wounding.  On appeal, he contends (1)

the trial court's admission of the custodial confession of a

non-testifying accomplice violated the Confrontation Clause and

Virginia's hearsay rule and (2) the evidence was insufficient to

support his conviction because it did not establish he was a

principal in the second degree.  We hold that the accomplice's

custodial confession was admissible under Virginia hearsay law

but inadmissible under the Confrontation Clause and that its

erroneous admission was not harmless.  Therefore, we reverse

appellant's convictions without reaching the sufficiency issue, and we remand for a new trial.

I.

FACTS

On March 22, 1998, four teenagers--Shaun Roberts, Ken Jones, Jesse Harrod and appellant--rode together in Roberts' car from Williamsburg to Hampton to visit Gwendolyn Williams and her friend, Christine Johnson, at Williams' apartment. Jones, Harrod and Johnson began to argue, and Jones threatened Johnson. About that time, three older boys from Williams' neighborhood came to Williams' apartment. Roberts and appellant thought Johnson had called the older boys over to fight Roberts and his friends, but they were able to leave without incident.

Roberts, Jones, Harrod and appellant returned to Williamsburg, where Jones retrieved a "big gun" from his house. About 10:00 p.m. that same night, they returned to Williams' apartment complex. Roberts was driving, appellant was sitting in the front passenger seat, Harrod was behind appellant, and Jones was behind the driver. Williams, Johnson and one of the older boys were standing outside Williams' apartment. Jones fired, hitting Williams.

Appellant was indicted for malicious wounding and the related use of a firearm and was tried jointly with Shaun Roberts in a bench trial. The Commonwealth sought to introduce the out-of-court custodial confession of accomplice Ken Jones,

the shooter,[1] who asserted his Fifth Amendment right not to testify.  Appellant argued that the confession was hearsay and that its admission would violate his right of confrontation. The trial court ruled that Jones' statement was a declaration against interest and admitted it into evidence.

The statements admitted were verbal and written statements Jones made to Detective Gillis.  Gillis went to Jones' high school, took Jones into custody, read Jones his Miranda rights and took his statement.  Jones initially denied any involvement in the crime but subsequently admitted his involvement and told Gillis where to find the gun.  Jones said, "[t]here was an argument [at Williams' apartment] between the girls and them, and . . . the girls had called an unknown male over to the apartment."  Then a group of boys gathered and "started acting like they was going to fight [Jones and his friends]."  Jones said they were able to leave without incident, but they were "mad and [Roberts] wanted to go[] back to see [what] was up but not without a gun."  They returned to Williamsburg where Jones retrieved his .22 rifle, and they went back to the area of Williams' apartment.  They found "a lot of people . . . wait[ing] for [them]," including "the same black male . . . they had [an] earlier altercation with."  People were yelling at them

---

[1] The statement included reference to an earlier robbery, but the Commonwealth offered it for its relevance to the shooting, and the trial court agreed to redact any reference to anything other than the shooting.

and moving toward the car but the car was too far away for them to reach it. "As [Roberts] turned around the car and started to leave . . . the parking lot, . . . everybody in the car was yelling for him to shoot, so he fired . . . to scare them."[2] Jones said he did not see anyone, did not aim and shot upward.

The Commonwealth subsequently offered statements appellant and codefendant Roberts made to police. Appellant posed no objection to the trial court's considering either statement as substantive evidence against him.

Appellant made two statements to Detective Payne.[3] Appellant told Payne

> that he was with the other people that were
> charged in this matter, that basically his
> only involvement with this was that he, in
> fact, rode in the vehicle, that he didn't
> actively participate in these things . . . .
>
> *       *       *       *       *       *       *
>
>     He indicated that the group of the four
> individuals did in fact go to that apartment
> earlier in the day, that there was a[n]
> altercation there between the girls and
> them, and that they had left.
>     Prior to going back, . . . [Roberts]
> said that he didn't want to go back without
> a gun, and . . . they drove up to James City
> County where [Jones] had gotten his gun.
>     And . . . at that particular point in
> time he wanted to get out, [he said take me

---

[2] Jones also said in his written statement that it was "Nobodys" idea "to shoot at the people on Sacramento Dr."

[3] Appellant's statements also contained a reference to what appeared to be an earlier robbery, but the Commonwealth asked the trial court "not to consider" "any reference to any robbery charge," and the trial court responded, "All right."

home,] he didn't want to go back, but did go
back with them.
   [T]hey went into the parking lot and
. . . the gentleman was standing outside,
and as they turned the vehicle around and as
they exited the parking lot . . . [Jones]
did in fact fire one shot.

Roberts also made a statement to Detective Payne.[4]  Roberts told Payne in detail about the repeated trips to Williams' home, Johnson's becoming angry, and the arrival of older boys he thought Johnson had called to fight Roberts and his companions. Roberts said that when they left Williams' house, appellant said they could get some beer in Williamsburg, so Roberts drove back to Williamsburg, believing they were going home anyway.  When they arrived in Williamsburg, it was still early, and they went back to Williams' house.  When they arrived, "the boy from earlier was standing outside and he started signaling for other boys to come.  [Appellant] said come on lets [sic] go and I hurried up and turned around and we were leaving.  I heard the gun shot behind us."  Roberts confirmed that Jones was the person who fired the shot.

Appellant did not testify, but Roberts took the stand in his own behalf.  Roberts testified about the repeated trips to Williams' apartment to see her.  Roberts denied returning to

_____

[4] Roberts' statement, which included references to an earlier robbery, was considered by the court in its entirety. The portion of Roberts' statement describing the robbery does not mention appellant and does not make clear whether he was present in the car during the robbery.

Williamsburg to get a gun and said he did not know Jones had a gun until they were on their way back to Hampton.  He gave no testimony regarding appellant's involvement or lack of involvement in the shooting.

The trial court convicted appellant of the charged offenses.  Codefendant Roberts also was convicted.

II.

ANALYSIS

A.

VIRGINIA'S HEARSAY RULE:
STATEMENT AGAINST PENAL INTEREST EXCEPTION

The admissibility of a statement made by an unavailable witness that is against his or her penal interest "is a 'firmly rooted' exception to the hearsay rule in Virginia."[5]  Lilly v.

---

[5] In reversing the Virginia Supreme Court's holding in Lilly on Confrontation Clause grounds, a plurality of the United States Supreme Court stated, "We assume, as we must, that [the accomplice's] statements were against his penal interest as a matter of [Virginia] law . . . ."  Lilly v. Virginia, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999).  As early as 1923, the Virginia Supreme Court recognized this exception for statements incriminating a third party declarant and exculpating an accused, either directly or indirectly.  See Hines v. Commonwealth, 136 Va. 728, 739-50, 117 S.E. 843, 846-49 (1923); see also Newberry v. Commonwealth, 191 Va. 445, 460-62, 61 S.E.2d 318, 325-26 (1950).  However, until more recently, no Virginia appellate court appears to have applied this principle in the context of a party's efforts to admit an accomplice's statement or confession against penal interest that also incriminates the accused.  See, e.g., Chandler v. Commonwealth, 249 Va. 270, 278-79, 455 S.E.2d 219, 224-25 (1995); Scaggs v. Commonwealth, 5 Va. App. 1, 4-5, 359 S.E.2d 830, 831-32 (1987) (holding that accomplice's out-of-court statement incriminating accused would have been admissible as statement against penal interest of accomplice if Commonwealth had proved accomplice was

Commonwealth, 255 Va. 558, 575, 499 S.E.2d 522, 534 (1998),

rev'd on other grounds, 119 S. Ct. 1887, 144 L. Ed. 2d 117

(1999).  Under this exception, an out-of-court statement is

admissible to prove the truth of the matters asserted therein if

three requirements are met:  (1) the declarant is unavailable to

testify at trial; (2) the statement is against the declarant's

interest at the time it was made; and (3) the declarant is

subjectively aware at the time the statement is made that it is

against his or her interest to make it.  See Lilly, 255 Va. at

573, 499 S.E.2d at 533; Randolph v. Commonwealth, 24 Va. App.

345, 355, 482 S.E.2d 101, 105-06 (1997).

In addition, the record must contain evidence other than

the declaration itself establishing its reliability, such as

independent evidence connecting the declarant with the confessed

crime.  See Lilly, 255 Va. at 573-74, 499 S.E.2d at 533-34;

---

unavailable but that error in admission of statement was
harmless).  The plurality in Lilly agreed, observing as follows:

> [P]rior to 1995, it appears that even
> Virginia rarely allowed statements against
> the penal interest of the declarant to be
> used at criminal trials. . . . Virginia
> relaxed that portion of its hearsay law when
> it decided Chandler v. Commonwealth, 249 Va.
> 270, 455 S.E.2d 219 (1995), and . . . it
> later apparently concluded that all
> statements against penal interest fall
> within "a 'firmly rooted' exception to
> hearsay in Virginia," [Lilly,] 255 Va., at
> 575, 499 S.E.2d, at 534 . . . .

Lilly, 119 S. Ct. at 1898-99.

Randolph, 24 Va. App. at 355-56, 482 S.E.2d at 106.  Such evidence may include testimony from other witnesses, physical evidence, and the similarities or "correspondence between [the declarant's] account and the accounts of other persons acquired by law enforcement authorities."  Lilly, 255 Va. at 574, 499 S.E.2d at 534.  It may also include evidence of the declarant's demeanor and the circumstances surrounding the giving of the statement, including those indicating the voluntariness of the confession.  See Raia v. Commonwealth, 23 Va. App. 546, 551, 478 S.E.2d 328, 330 (1996).

That the declarant's statements are simultaneously against penal interest and "self-serving, in that they tend[] to shift principal responsibility to others or to offer claims of mitigating circumstances, goes to the weight the [fact finder] [may] assign to them and not to their admissibility."  Lilly, 255 Va. at 574, 499 S.E.2d at 534.  Determining whether a statement against penal interest is reliable "lies within 'the sound discretion of the trial court, to be determined upon the facts and circumstances of each case.'"  Raia, 23 Va. App. at 550, 478 S.E.2d at 330 (quoting Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978)).

We hold that the trial court did not abuse its discretion in ruling that Jones' hearsay statements to Detective Gillis satisfied the three-pronged test and, therefore, were directly admissible against appellant under the statement against penal

interest exception to Virginia's hearsay rule. Under the first prong, the record indicates Jones was unavailable as a witness because he asserted his Fifth Amendment right not to testify. See Lilly, 255 Va. at 573, 499 S.E.2d at 533.

Under the second prong, Jones' statement was against his interest because he admitted firing the shot that struck the victim and admitted that he intended to fire the shot, although he denied aiming or intending to hurt anyone. By making this statement, Jones subjected himself to criminal liability for a variety of possible offenses, including malicious wounding and discharging a firearm from a motor vehicle.

Under the third prong, the record supports the conclusion that Jones was aware his statements were against his interest at the time he made them. Detective Gillis took Jones, a high school student, into custody and read him his Miranda rights, which included information that anything Jones said could be used against him. See, e.g., Penn v. Commonwealth, 210 Va. 242, 250, 169 S.E.2d 427, 433 (1969). After saying he understood his rights and denying any involvement in the crime, Jones then admitted that the gun was his, was still in his possession and that he was the person who fired the shot that wounded the victim. This evidence was sufficient to establish Jones' subjective awareness that the statements were against his penal interest.

Finally, other evidence connected Jones to the confessed crime, supporting the conclusion that the statement as a whole was reliable enough to be admitted.  Johnson saw "fire" come from the car window where Jones was sitting, and both appellant and Roberts confirmed that Jones was the person who fired the shot.  The absence of evidence corroborating Jones' statement that "everybody" in the car encouraged him to shoot is not dispositive of the statement's admissibility.  The self-serving nature of this portion of the statement "goes to the weight the [fact finder] [may] assign to [it] and not to [its] admissibility."  Lilly, 255 Va. at 574, 499 S.E.2d at 534.

For these reasons, the trial court did not abuse its discretion in holding the statement was admissible under the Virginia hearsay rule.

B.

CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment, which applies to the States, provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; see Ohio v. Roberts, 448 U.S. 56, 62-63, 100 S. Ct. 2531, 2537, 65 L. Ed. 2d 597 (1980).  The right to confront witnesses secured by the Sixth Amendment encompasses the right to cross-examine them. See Cruz v. New York, 481 U.S. 186, 107 S. Ct. 1714, 95 L. Ed. 2d 162 (1987); Douglas v. Alabama, 380 U.S. 415, 418, 85 S. Ct.

1074, 1076, 13 L. Ed. 2d 934 (1965).  The right to confront and to cross-examine witnesses is a "functional right" that "advance[s] the pursuit of truth" and "promotes reliability" in criminal trials by "ensuring that convictions will not be based on the charges of unseen and unknown--and hence unchallengeable--individuals."  Lee v. Illinois, 476 U.S. 530, 540, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514 (1986).

Under the Confrontation Clause, a hearsay statement of an unavailable declarant is admissible "only if it bears adequate 'indicia of reliability.'"  Roberts, 448 U.S. at 66, 100 S. Ct. at 2539.  The United States Supreme Court consistently has held, for Confrontation Clause purposes,

> that the veracity of hearsay statements is
> sufficiently dependable to allow the
> untested admission of such statements
> against an accused when (1) "the evidence
> falls within a firmly rooted hearsay
> exception" or (2) it contains
> "particularized guarantees of
> trustworthiness" such that adversarial
> testing would be expected to add little, if
> anything, to the statements' reliability.

Lilly v. Virginia, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999) (plurality opinion) (quoting Roberts, 448 U.S. at 66, 100 S. Ct. at 2539).  Although a hearsay statement that is against the penal interest of the declarant is recognized as a "firmly rooted exception" to the hearsay rule in Virginia,[6] see Lilly, 255 Va. at 575, 499 S.E.2d at 534; Raia, 23 Va. App. at 552, 478

---

[6] See supra note 5.

S.E.2d at 331, the United States Supreme Court has expressly refused to analyze "a confession by an accomplice which incriminates a criminal defendant" as a declaration against penal interest for the purpose of determining the admissibility of such hearsay under the Confrontation Clause, see Lee, 476 U.S. at 544 n.5, 106 S. Ct. at 2064 n.5. In Lee, the Supreme Court stated that the category of "declarations against penal interest" is "too large a class for meaningful Confrontation Clause analysis" and held that "a confession by an accomplice which incriminates a criminal defendant" should be considered a distinct category of hearsay for the purpose of determining its admissibility under the Sixth Amendment. See id. More recently, in Lilly, seven justices voiced their continuing adherence to Lee's categorization of such confessions. See 119 S. Ct. at 1895 (plurality opinion); 119 S. Ct. at 1904 (Rehnquist, C.J., joined by O'Connor and Kennedy, JJ., concurring in the judgment).

The Court stated in Lee that, unlike hearsay statements that fall under firmly rooted hearsay exceptions, which presumably include statements against penal interest made in other contexts, accomplices' confessions that incriminate defendants are "presumptively unreliable" under the Sixth Amendment's Confrontation Clause. 476 U.S. at 541, 106 S. Ct. at 2062. The Court also stated in Lee, and reiterated in Lilly, that the presumption of unreliability that attaches to

accomplices' confessions that incriminate defendants may be rebutted.[7] See Lee, 476 U.S. at 543, 106 S. Ct. at 2063; Lilly, 119 S. Ct. at 1899 n.5, 1900 (plurality opinion); 119 S. Ct. at 1903 (Thomas, J., concurring); 119 S. Ct. at 1904-05 (Rehnquist, C.J., concurring).  A hearsay statement that falls into this category may "meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.'"  Lee, 476 U.S. at 543, 106 S. Ct. at 2063;

---

[7] The plurality of four justices in Lilly opined that it is "highly unlikely" that the presumption can be effectively rebutted if the statement "shift[s] or spread[s] blame."  119 S. Ct. at 1899 n.5, 1900 (plurality opinion of Stevens, J., joined by Souter, Ginsburg and Breyer, JJ.).  Four other justices opined that the Confrontation Clause "does not impose a 'blanket ban on the government's use of accomplice statements that incriminate a defendant.'"  119 S. Ct. at 1903 (Thomas, J., concurring in part and concurring in the judgment); 119 S. Ct. at 1904-05 (Rehnquist, C.J., joined by O'Connor and Kennedy, JJ., concurring in the judgment).

Justice Scalia was the only member of the Court whose opinion did not specifically acknowledge this view.  Even Justice Scalia's opinion leaves open this possibility.  He wrote that Lilly involved "a paradigmatic Confrontation Clause violation," but before making this statement, he observed that "[the accomplice] told police officers that [defendant Lilly] committed the charged murder."  119 S. Ct. at 1903.  Therefore, the type of statement to which Scalia referred could be characterized as one which shifts blame away from the accomplice and wholly onto the defendant.  Further, Justice Scalia authored the opinion in Cruz, a case involving an accomplice's custodial confession.  In Cruz, the Court said "the defendant's confession may be considered at trial in assessing whether his co-defendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him."  481 U.S. at 193-94, 107 S. Ct. at 1719.  Thus, unless Justice Scalia has abandoned the views he espoused in Cruz, he remains of the opinion that an accomplice's custodial confession incriminating a defendant may be directly admissible against the defendant under certain circumstances.

*Lilly*, 119 S. Ct. at 1894, 1899-1901 (plurality opinion); *id.* at 1905-06 (Rehnquist, C.J., concurring).

The Court previously has recognized that whether the portions of an accomplice's confession regarding a defendant's participation in a crime are sufficiently trustworthy to be admissible without cross-examination under the Sixth Amendment is determined by considering (1) the circumstances surrounding the accomplice's confession and (2) in a case in which the defendant also made a confession, the extent to which the accomplice's and the defendant's confessions "interlock." *See* *Lee*, 476 U.S. at 544-46, 106 S. Ct. at 2064-65; *Cruz*, 481 U.S. at 193-94, 107 S. Ct. at 1719. The Court's recent holding in *Lilly* does not indicate a rejection of the interlock theory. A majority in *Lilly* presumably concluded that the accomplice's custodial confession did not bear sufficient indicia of reliability to be admissible against Lilly without cross-examination but did not conclude that such statements are never admissible. *See* *Lilly*, 119 S. Ct. at 1899-1901 (plurality opinion); 119 S. Ct. at 1903 (Scalia, J., concurring in part and concurring in the judgment) (holding that admission of confession was "paradigmatic Confrontation Clause violation" without discussing bases for independent admission such as indicia of reliability). Further, the Court did not have occasion to consider the impact of the interlocking nature of the defendant's and accomplice's confessions in *Lilly* because

the defendant's confession was directly at odds with the challenged confession of his accomplice. See Lilly, 119 S. Ct. at 1892. The accomplice reported to police that the defendant murdered the victim and masterminded the related carjacking and several robberies. See id. The defendant, by contrast, reported that the accomplice and a third person forced him to participate in the robberies, and he did not mention the murder.[8] See id.

When evaluating the circumstances surrounding the confession, a court should consider the extent to which the

---

[8] The plurality in Lilly noted its rejection of the "notion that 'evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears "particularized guarantees of trustworthiness."'" Id. at 1900-01 (citation omitted). However, in doing so, it indirectly confirmed its belief that a defendant's interlocking confession, where one exists, may appropriately be considered in assessing the reliability of the accomplice's statement. In rejecting the use of corroborative evidence to assess the reliability of an accomplice's confession, the plurality in Lilly relied on the Court's earlier decision in Idaho v. Wright, 497 U.S. 805, 822, 110 S. Ct. 3139, 3150, 111 L. Ed. 2d 638 (1990). In Wright, the Court discussed the interlock principle and did not expressly reject it or overrule the language in Lee. See id. at 823-24 & n.*, 110 S. Ct. at 3150-51 & n.*. It said that, in Lee, it considered the interlock of the accomplice's and defendant's confessions on the one hand and declined to rely on corroborative physical evidence on the other. See Wright, 497 U.S. at 824, 110 S. Ct. at 3151 (citing Lee, 476 U.S. at 545-46, 106 S. Ct. at 2064-65). It also noted that it "rejected the 'interlock' theory in [Lee,]" in which it held that it did not apply on those facts, but it did not hold that consideration of "interlock" is inappropriate corroborative evidence. See Wright, 497 U.S. at 824, 110 S. Ct. at 3151. Therefore, the plurality in Lilly did not reject the Court's prior holdings on the significance of interlock to the independent admissibility of an accomplice's statement implicating the defendant.

accomplice was "free from any desire, motive, or impulse . . . either to mitigate the appearance of his own culpability by spreading the blame [to the defendant] or to overstate [the defendant's] involvement in retaliation for her having implicated him in the [crime]." Lee, 476 U.S. at 544, 106 S. Ct. at 2064. When evaluating the interlocking nature of the accomplice's and the defendant's confessions, a court should consider the extent to which those portions of the accomplice's confession regarding the defendant's participation in the crime are substantiated by the defendant's own confession. See id. at 545, 106 S. Ct. at 2064. When the discrepancies between the statements are "not insignificant," the accomplice's out-of-court confession is inadmissible under the Sixth Amendment. Id.; see Cruz, 481 U.S. at 192-93, 107 S. Ct. at 1718-19 (holding that tightly interlocking nature of confessions establishes reliability, for if codefendant's confession "confirms essentially the same facts as the defendant's own confession it is more likely to be true").

A majority of the Court has expressly held that two factors are irrelevant to the inquiry of whether an accomplice's confession that incriminates a defendant is admissible under the Sixth Amendment: (1) "whether the [accomplice's] confession was found to be voluntary for Fifth Amendment purposes," see Lee, 476 U.S. at 544, 106 S. Ct. at 2064 (stating that "such a finding does not bear on the [Sixth Amendment] question"), and

(2) whether the other evidence at trial (except for the defendant's own confession) tends to corroborate the truth of the accomplice's statement, see Wright, 497 U.S. at 822-23, 110 S. Ct. at 3150 (stating that such corroboration is "no substitute for cross-examination of the declarant at trial" and would "permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial"). Instead, as with all hearsay statements that are deemed admissible under the Confrontation Clause, the portion of the accomplice's confession incriminating the defendant "must possess indicia of reliability by virtue of its inherent trustworthiness" such that adversarial testing would add little to its reliability. Id. (emphasis added). "[T]he 'particularized guarantees of trustworthiness' required for admission under the Confrontation Clause must . . . be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief."[9] Id. at 820, 110 S. Ct. at 3149.

---

[9] The plurality in Lilly suggested additional limits on the types of evidence relevant to establish a statement's trustworthiness. It rejected the notion that "the police's informing [the accomplice] of his Miranda rights render[ed] the circumstances surrounding his statements significantly more trustworthy," saying that "a suspect's consciousness of his Miranda rights has little, if any, bearing on the likelihood of truthfulness of his statements." Lilly, 119 S. Ct. at 1901 (analogizing to Lee's rejection of idea that Fifth Amendment voluntariness determination bears on trustworthiness of statement (quoting Lee, 476 U.S. at 544, 106 S. Ct. at 2064)). It also said that "the absence of an express promise of leniency

Here, Jones admitted in his statement that he fired the shot that wounded the victim but contended he did not intend to hurt anyone. Although appellant's and Jones' statements interlock in many respects, including the identities of those present in Roberts' car and their identification of Jones as the shooter, at least one significant discrepancy exists regarding appellant's participation in the crime. Appellant said in his statement that he was merely present in the car during the shooting and that "he didn't actively participate in these things." Jones, by contrast, said that "everybody" in the car verbally encouraged him to "shoot up in the air" as Roberts' car left the victim's neighborhood. This portion of Jones' statement constitutes a classic attempt of one defendant to shift to others at least some of the blame for his actions. As a result, Jones' custodial confession did not bear sufficient indicia of reliability to be directly admissible against appellant in the absence of an opportunity for cross-examination.

---

to [the accomplice] does not enhance his statements' reliability to the level necessary for their untested admission." Id. (emphasis added). It reasoned that "[t]he police need not tell a person who is in custody that his statements may gain him leniency in order for the suspect to surmise that speaking up, and particularly placing blame on his cohorts, may inure to his advantage." Id. The plurality did not suggest that the absence of a promise of leniency is not a relevant factor for consideration. Further, of course, because this portion of the plurality opinion represented the view of only four members of the Court, its contents are advisory rather than mandatory.

C.

HARMLESS ERROR

Under settled principles, a criminal conviction involving a violation of the Confrontation Clause may be upheld if the violation constituted error which was "'harmless beyond a reasonable doubt.'"  Lilly, 119 S. Ct. at 1901 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).  Such an error may be harmless beyond a reasonable doubt when other evidence of guilt "is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper . . . admission [of the confession] was harmless error."  See Schneble v. Florida, 405 U.S. 427, 430, 92 S. Ct. 1056, 1059, 31 L. Ed. 2d 340 (1972) (involving Confrontation Clause error).

> This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, ___ S.E.2d ___, ___ (1999) (on remand from United States Supreme Court).

Under certain circumstances, where a Confrontation Clause error results from the admission of the custodial confession of

a non-testifying accomplice, "the defendant's confession . . . may be considered on appeal in assessing whether any Confrontation Clause violation was harmless." Cruz, 481 U.S. at 193-94, 107 S. Ct. at 1719. The Court held in Cruz that, in the usual case, the defendant challenges the existence or accuracy of his own confession, and "[an] [accomplice's] confession will be . . . enormously damaging if it confirms, in all essential respects, the defendant's alleged confession." Id. at 192, 107 S. Ct. at 1718. Under these circumstances, "a[n] [accomplice's] confession that corroborates the defendant's confession significantly harms the defendant's case, whereas one that is positively incompatible gives credence to the defendant's assertion that his own alleged confession was nonexistent or false." Id. at 192, 107 S. Ct. at 1719. Therefore, where a defendant attempts to disclaim his own confession and the non-testifying accomplice's confession closely interlocks, the erroneous admission of the accomplice's statement generally cannot be said to be harmless error. See id. at 192, 107 S. Ct. at 1718-19.

Although considering the prospect unlikely, the Court also acknowledged in Cruz that if the defendant's and the accomplice's confessions "interlock" and the defendant actually stands by his own confession, "it [may] be said that the [accomplice's] confession does no more than support the defendant's very own case." Id. at 192, 107 S. Ct. at 1719.

Under these circumstances, therefore, the erroneous admission of an accomplice's interlocking confession may be harmless error.

Here, appellant did not testify and did not object to the admission of his own confession[10] in which he admitted being in the car with Jones, whom he knew had a gun, but denied he participated in or encouraged the shooting. If Jones' confession interlocked with appellant's in all critical respects, its admission could be harmless. As set out above, however, Jones' statement differed from appellant's in one key respect--Jones said "everybody" in the car, which would include appellant, encouraged him to shoot, whereas appellant said in his statement that he was merely present in the car during the shooting and that "he didn't actively participate in these things." Therefore, the admission of appellant's own statement into evidence did not, standing alone, render the erroneous admission of Jones' statement harmless.

We also conclude that the evidence of appellant's guilt, other than Jones' statement, was not overwhelming. The Commonwealth proceeded against appellant on the theory that appellant was a principal in the second degree to Jones' shooting of the victim. One who is "present, aiding and abetting, and intend[s] his or her words, gestures, signals, or

---

[10] Appellant's lack of objection to the admission of his confession, combined with his failure to testify and his reliance on the confession in argument to the court, can only be fairly interpreted as standing by his own confession.

actions to in some way encourage, advise, urge, or in some way help the person committing the crime to commit it" is a principal in the second degree. <u>McGill v. Commonwealth</u>, 24 Va. App. 728, 733, 485 S.E.2d 173, 175 (1997). "[M]ere presence and consent will not suffice." <u>Underwood v. Commonwealth</u>, 218 Va. 1045, 1048, 243 S.E.2d 231, 233 (1978). The person "must share the criminal intent of the party who actually committed the [crime] or be guilty of some overt act in furtherance thereof." <u>Augustine v. Commonwealth</u>, 226 Va. 120, 124, 306 S.E.2d 886, 889 (1983). The circumstantial evidence of appellant's guilt was not so overwhelming that we can say the erroneous admission of Jones' statement, the only direct evidence of appellant's encouragement, was harmless beyond a reasonable doubt.

For these reasons, we hold that the trial court's admission of accomplice Jones' custodial confession violated the Confrontation Clause and that its erroneous admission was not harmless. Therefore, we reverse appellant's convictions and remand for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>