COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


ROBERT BRUCE CAIRNS

OPINION BY

v.    Record No. 2343-99-2          JUDGE ROSEMARIE ANNUNZIATA
                                         MARCH 6, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

Craig S. Cooley for appellant.

Marla Graff Decker, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


The appellant, Robert Bruce Cairns, was convicted following

a bench trial in the Circuit Court of Chesterfield County of

four counts of forcible sodomy, one count of rape, and one count

of producing sexually explicit materials in violation of Code

§ 18.2-374.1.  Cairns was sentenced to a total of 155 years

imprisonment, with ninety-five years suspended.  On appeal,

Cairns alleges the trial court erred in admitting his

codefendant's statement against him in their joint trial

because:  (1) the admission of the statement violated the

---

[*] Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

marital privilege under Code § 19.2-271.2; (2) the statement constituted inadmissible hearsay; and (3) the admission of the statement violated his Sixth Amendment rights.  Because we find the admission of the statement violated Cairns' rights under the Sixth Amendment's Confrontation Clause, and that this error was not harmless, we reverse the convictions and remand for a new trial.

I.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below.  Winckler v. Commonwealth, 32 Va. App. 836, 844, 531 S.E.2d 45, 49 (2000).  In 1998, WW, age fourteen, and NC, age eleven, both female, were living with their parents, Cairns and his wife and codefendant, Alice Cairns.[1]  WW testified about a variety of episodes of sexual activity to which her parents subjected her.  WW reported that the first incident occurred on February 16, 1998, when "[she] had to give [her] mom and dad both oral sex, and they gave [her] oral sex."[2]  She also testified that her father "got on top" of her and "tried to have sex" with her, but she told him to stop "because it hurt."

_____

[1] WW was Cairns' stepdaughter.

[2] This evidence supports Count #1, which charged Cairns with committing forcible sodomy with WW sometime between February 1, 1998 and February 28, 1998, in violation of Code § 18.2-67.1.

Near the end of August, WW and NC "had to play a card game" with their parents. The children had been "grounded," and Cairns agreed they could reduce the amount of time they were grounded if they played "truth or dare," or cards "or something like that." In response, the girls agreed to make a movie, play two card games, and play two games of "truth or dare" in order to reduce their punishment.

That evening, WW, NC, Cairns, and Cairns' wife, Alice, made a movie.[3] The two girls were in their parents' bedroom. Cairns and the two girls were on the bed, and Mrs. Cairns operated the video camera. At some point, the two children were naked. WW had "oral sex" with Cairns, who then had "oral sex" with her.[4] NC also had "oral sex" with Cairns.[5] NC explained, "we had to suck [Cairns'] dick and do stuff to each other and my mom." At one point, when she was not operating the camera, Mrs. Cairns put her tongue inside NC's vagina. At another time, Cairns got on top of WW and asked her to allow him to engage in sexual intercourse with her, but she refused. He asked her to do it

---

[3] The production of this sexually explicit video was the basis of Count #6, which alleged that Cairns violated Code § 18.2-374.1 on or about September 1, 1998.

[4] Count #2 charged Cairns with committing forcible sodomy with WW on or about September 1, 1998, in violation of Code § 18.2-67.1.

[5] In Count #5, Cairns was charged with violating Code § 18.2-67.1 by having forcible sodomy with NC on or about September 1, 1998.

for the sake of the camera, but she continued to refuse.  He said, "fine," got off her and had NC give him "oral sex" a second time.  WW gave him "oral sex" again and NC complained that she was getting tired.  As a result, she traded places with her mother and operated the camera.  Mrs. Cairns then had "oral sex" with Cairns.  The videotaping lasted about an hour.  At a later time, Cairns played the tape in front of his two daughters.

A second movie was made, which WW did not recall.  NC, however, described the taping as very similar in nature to the first tape.  She explained that Cairns "made us suck his penis and lick my mom and each other and touch each other's boobs."[6] Mrs. Cairns ultimately assisted Cairns in ejaculating at the end of the taping session.

In early September, WW played "strip poker" with her mother and father.  When WW ran out of clothing to remove, she was issued some imaginary clothes.  When she ran out of those, she was left with "doing favors."  Cairns told her to "get on [her] back," and he "had sex with [her]," putting his penis inside her

---

[6] The timing of the second videotaping is not apparent from the record; however, Count #4 charged Cairns with committing forcible sodomy with NC on or about May 1, 1998 through August 31, 1998, in violation of Code § 18.2-67.1.

vagina.[7]  Cairns then "had sex" with his wife on the other side

of the living room.

WW did not immediately report the incidents.  She feared

she and her siblings[8] would be removed from the home and placed

in a foster home.  She also explained that Cairns would threaten

to "ground" her if she refused to participate in the sexual

conduct.  NC did not report the events because she feared

Cairns' "bad temper" and she feared being grounded.  She

testified that she was forced to participate in the reported

activities "[m]ost of the time."

Both Cairns and his wife were interviewed by police, at the

police station, prior to their arrests.  In his statement,

Cairns denied participating in any sexual conduct with the

girls.  Although Mrs. Cairns initially denied having any

knowledge of the alleged activities, after the interviewing

officer reminded her that she had a criminal record and told

her, "the best thing you can do is be honest with us to help

yourself out," she confirmed some of her daughters' allegations.

Mrs. Cairns confirmed that her husband had sex with WW and that

NC had performed oral sex on Cairns but did not specify the

dates on which the conduct occurred.  Mrs. Cairns stated that

---

[7] In Count #3, Cairns was charged with raping WW on or about September 5, 1998 through September 6, 1998, in violation of Code § 18.2-61.

[8] Cairns and his wife also have two young sons who were not involved in the alleged conduct.

she had videotaped her husband on the bed "touching" the girls but denied that he had engaged in any sexual conduct with the girls during the filming, contrary to the testimony of WW and NC. She also denied having participated in any of the activities during the videotaping. She denied knowing where the videotapes were located, stating, "[Cairns] always did somethin' with 'em." Mrs. Cairns stated she disapproved of what her husband was doing with the daughters. When asked why she did not stop him, she replied, "there ain't a lot I can do about it, simply because he's quite a bit stronger than I am. He can overpower me . . . ." She denied performing oral sex on either of the girls but admitted she had kissed the "top part" of WW's vagina.

Cairns and his wife were tried together during a bench trial. The trial court overruled Cairns' pretrial motion to suppress his wife's statement. Detective Ruth Baker, who took Mrs. Cairns' statement, testified as to its content, and the statement was introduced into evidence. The prosecuting attorney relied, in part, on Mrs. Cairns' statement in her closing argument, and the trial court found Cairns guilty of six of the seven charges against him.[9]

---

[9] The trial court granted Cairns' motion to strike Count #7, which charged Cairns with taking indecent liberties with NC on or about May 1, 1998 through August 31, 1998. The court found that charge was "merged into some of the other charges."

II.

ANALYSIS

A.

Marital Privilege

Cairns alleges the admission of his codefendant's statement violated the marital privilege protection provided by Code § 19.2-271.2.  This allegation is without merit.

Code § 19.2-271.2 provides that "[i]n criminal cases . . . neither [husband nor wife] shall be compelled to be called as a witness against the other, except [in certain specified instances]."  The statute pertains specifically to testimony in criminal cases.  The statement of Cairns' codefendant, his wife, was given to police prior to trial.  Mrs. Cairns was not compelled to testify against Cairns, and, in fact, did not testify at their joint trial.  Therefore, Code § 19.2-271.2 does not apply in this case.  Livingston v. Commonwealth, 21 Va. App. 621, 628, 466 S.E.2d 757, 760 (1996) (statute does not pertain to information given during pretrial investigations).

B.

Virginia's Statement Against Penal Interest Hearsay Exception

Cairns also alleges that his wife's statement constituted inadmissible hearsay under Virginia law.  We disagree.

A statement made by an unavailable witness that is against the witness' penal interest is admissible as an exception to the hearsay rule if three requirements are met:  (1) the declarant

must be unavailable to testify at trial; (2) the statement must be against the declarant's interest at the time it is made; and (3) the declarant must be aware at the time he or she makes the statement that the statement is against his or her interest. Rankins v. Commonwealth, 31 Va. App. 352, 361, 523 S.E.2d 524, 529 (2000). In addition, where the declarant "seeks to limit [her] culpability by implicating others," Lilly v. Commonwealth, 255 Va. 558, 573, 499 S.E.2d 522, 533 (1998), rev'd on other grounds, 527 U.S. 116 (1999), the reliability of the statement must be established by evidence other than the statement itself connecting the declarant to the crime. Id.; Rankins, 31 Va. App. at 362, 523 S.E.2d at 529.

We hold that the trial court did not abuse its discretion in admitting Mrs. Cairns' statement as an exception to the hearsay rule. Under the Fifth Amendment, she could not have been compelled to testify; therefore, she was an unavailable witness. Lilly, 255 Va. at 573, 499 S.E.2d at 533.

In her statement to the police, Mrs. Cairns admitted kissing the "top part" of WW's vagina, and she admitted participating in the videotaping of her daughters while they were engaged in sexual conduct with Cairns. Therefore, because she implicated herself as a participant in at least one crime, her statement was clearly against her penal interest at the time it was made.

The record also shows that Mrs. Cairns knew her statement was against her interest at the time she made it. Although she was not under arrest when she spoke with the police, she knew her daughters had made allegations concerning the events that had occurred. Furthermore, she initially denied having any knowledge of and denied participating in the alleged events. Only after the interviewing officer reminded her that she had "already been convicted of some stuff in the past," and told her "[t]he best thing you can do is cooperate with us and tell us the truth and the whole truth," Mrs. Cairns admitted her involvement. The evidence clearly establishes that Mrs. Cairns understood her statement was against her penal interest.

In her statement, she attempted to minimize her involvement, shifting some of the blame to Cairns. When initially asked about the videotaping, she replied, "I can't tell you a whole lot, most of the time that anything that goes on in that house at night, I'm at work." When she ultimately admitted having filmed her husband with the girls, she denied knowing where the tapes were located, stating, "if anything like that was made, [Cairns] always did somethin' with 'em." When asked if she ever participated in the activities on camera, she replied, "Nope. Sat there with the video camera." Mrs. Cairns told the police that her husband had sex with WW but said she left the room while the two were engaged in the conduct. Finally, she told police she disapproved of what her husband was

doing with the daughters, but stated, "there ain't a lot I can do about it, simply because he's quite a bit stronger than I am. He can overpower me . . . ." Although Mrs. Cairns attempted to shift the responsibility for the activities to her husband, her statement and her involvement in the alleged crimes were corroborated on many points by WW and NC, thus "supporting the conclusion that the statement as a whole was reliable enough to be admitted." Rankins, 31 Va. App. at 364, 523 S.E.2d at 530.

Therefore, the court did not abuse its discretion in admitting the statement as an exception to the Virginia hearsay rule.

C.

Sixth Amendment Confrontation Clause

1. Admissibility of the Statement

Cairns next alleges the admission into evidence of his codefendant's statement during their joint trial violated his Sixth Amendment rights. We agree.

The Sixth and Fourteenth Amendments to the United States Constitution give a defendant in a state criminal trial the right "to be confronted with the witnesses against him." U.S. Const. amend. VI, amend. XIV. When the prosecution introduces the statement of a codefendant who invokes his or her Fifth Amendment right to not testify, the defendant is denied the right to confront or cross-examine the witness, thus implicating the Sixth Amendment. Lee v. Illinois, 476 U.S. 530, 541 (1986).

A hearsay statement made by an unavailable witness may only be introduced if (1) the evidence falls within a firmly rooted hearsay exception; or (2) the evidence contains particularized guarantees of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66 (1980). Although statements by a codefendant may fall under the Virginia "statement against interest" hearsay exception, as discussed in the previous section, the United States Supreme Court has held that such statements are inherently unreliable, Lee, 476 U.S. at 541, 545, and, therefore, do not fall within a firmly rooted hearsay exception for Sixth Amendment purposes. Lilly v. Virginia, 527 U.S. 116, 134 (1999) (plurality opinion).

Therefore, a statement by a codefendant can only be introduced if the statement contains "particularized guarantees of trustworthiness such that the adversarial testing of the statement would be expected to add little, if anything, to the statement's reliability." Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 124 (2000). In determining whether a codefendant's statement contains such guarantees of trustworthiness, we must examine the statement itself and the circumstances surrounding the making of the statement. Rankins, 31 Va. App. at 369, 523 S.E.2d at 532. It is irrelevant that other evidence introduced at trial corroborates the codefendant's statement. Lilly, 527 U.S. at 137-38 (such "bootstrap[ping] on the trustworthiness of other evidence" is

not allowed).[10]  Additionally, the fact that the statement was made voluntarily, following the reading of one's Miranda rights, is also irrelevant in determining the trustworthiness of the statement.  Id. at 138.

"When evaluating circumstances surrounding the confession, a court should consider the extent to which the accomplice was 'free from any desire, motive, or impulse . . . to mitigate the appearance of his own culpability by spreading the blame [to the defendant] . . . .'"  Rankins, 31 Va. App. at 368, 523 S.E.2d at 532 (quoting Lee, 476 U.S. at 544).  In determining whether the codefendant was free from a desire to mitigate her involvement, we must consider factors such as whether the codefendant made the statement to the police, while in custody, Lilly, 527 U.S. at 139, whether the statement was given in response to questions from police officers who "knew what they were looking for," Lee, 476 U.S. at 544; see also Lilly, 527 U.S. at 139; Bass v. Commonwealth, 31 Va. App. 373, 384, 523 S.E.2d 534, 539 (2000), whether the codefendant knew she had already been implicated in the alleged crimes, id. at 384, 523 S.E.2d at 539, whether there was any contemporaneous cross-examination conducted, id., and

---

[10] This is the main distinction between the Virginia statement against penal interest hearsay exception and the requirements of the Confrontation Clause.  Under the former, the existence of evidence corroborating the codefendant's statement can support a finding that the statement is reliable and, thus, admissible.  Under the Confrontation Clause, the existence of such corroborating evidence may not be considered in determining the reliability of the statement.

whether the codefendant attempted to shift blame to the defendant, Lilly, 527 U.S. at 137; Rankins, 31 Va. App. at 370, 523 S.E.2d at 533.

In this case, Mrs. Cairns made the statement to police, while at the police station, alone in an interviewing room with two officers. Although she was not under arrest at the time she made the statement, and was so informed by the interviewing officer, she knew at the time of the interview that the children had made allegations concerning the conduct that had occurred in the house. In addition, the officer asked her specific, leading questions, and told her, "we're aware of . . . a lot of stuff, so the best thing you can do is be honest with us." Finally, in her statement to the police, Mrs. Cairns attempted to mitigate her reported participation in the offenses and to shift blame to Cairns. She denied having knowledge of and being involved in most of the alleged criminal activities, stating, "[m]ost of the time that anything that [sic] goes on in that house at night, I'm at work." She admitted holding the camera during the videotaping, but denied participating, and she stated that "if anything like that [a videotape] was made, Robert [Cairns] always did somethin' with 'em. I never knew where they went." When asked how she felt about Cairns having sex with her daughter, and why she did not stop him, she replied, "there ain't a lot I can do about it, simply because he's quite a bit stronger than I am."

We find that because of the content of the statement and the circumstances under which the statement was given, the statement does not contain the requisite particularized guarantees of trustworthiness. Therefore, the trial court erred when it admitted the statement.

## 2. Harmless Error

Although we find the statement was inadmissible under the Sixth Amendment, constitutional error does not compel reversal if the error was harmless beyond a reasonable doubt. Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999). Such error cannot be deemed harmless in cases where "'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Id. (quoting Chapman v. California, 386 U.S. 18, 23 (1967)). Factors which provide guidance to the resolution of the issue include: (1) whether the statement was cumulative of evidence already introduced; (2) whether the statement was corroborated or contradicted by other evidence in the case; (3) the importance of the statement to the Commonwealth's case; and (4) the overall strength of the Commonwealth's case. Id. at 551, 523 S.E.2d at 209; Dearing, 259 Va. at 123, 524 S.E.2d at 125; see also Harrington v. California, 395 U.S. 250, 254 (1969) (where remaining evidence of guilt is "overwhelming," error deemed harmless).

While Mrs. Cairns' statement corroborated some of the allegations made by her daughters, WW and NC,[11] her statement contradicted Cairns' admitted statement in which he denied participating in any sexual activity with his daughters.  Cf. Bass, 31 Va. App. at 390-91, 523 S.E.2d at 543 (fact that the codefendant's and the defendant's statements "interlocked" contributed to harmlessness of error).

Moreover, the only other evidence pointing to Cairns' guilt raised issues of credibility and, for that reason cannot be considered "overwhelming."  See Lilly, 258 Va. at 552, 523 S.E.2d at 209.  In Lilly, three defendants shot and killed a man.  The only evidence that Lilly was the triggerman came from the testimony of one of his codefendants, Barker, and the statement given to police prior to trial by his other codefendant, his brother Mark.  The United States Supreme Court held Mark's statement was inadmissible under the Sixth Amendment and remanded the case to the Virginia Supreme Court for a harmless error analysis.  Lilly, 527 U.S. at 139-40.  On remand, the Virginia Supreme Court noted that, excluding Mark's inadmissible statement, Lilly's conviction rested on the credibility of codefendant Barker's testimony.  It further considered the likely impact of Mark's statement, "coming as

_____

[11] Mrs. Cairns admitted kissing the "top part" of WW's vagina, that NC had to perform oral sex on Cairns, that Cairns had sex with WW, and that she videotaped Cairns "kissing" and "touching" the girls on the bed.

[it] did, from Lilly's brother[, it] undoubtedly carried weight with the jury." Lilly, 258 Va. at 553, 523 S.E.2d at 210. The Court found that the remaining evidence, other than Mark's statement, was not overwhelming. Given the nature of the other evidence in the case, resting as it did on the credibility of Barker's testimony, viewed together with the absence of physical evidence that Lilly was the triggerman and the absence of a confession by the defendant, id. at 552, 523 S.E.2d 209-10, the Court concluded the admission of the statement was not harmless. Id. at 553, 523 S.E.2d at 210; see also Rankins, 31 Va. App. at 372-73, 523 S.E.2d at 534 (the erroneously admitted statement was the only direct evidence of defendant's guilt); cf. Schneble v. Florida, 405 U.S. 427, 431 (1972) (in finding the remaining evidence to be overwhelming, the Court relied on the fact that the defendant confessed, and, in fact, the Court held that without the defendant's confession, the prosecution's case was "virtually nonexistent"); Harrington, 395 U.S. at 253-54 (the defendant's own statements placed him at the scene of the crime); Pitt v. Commonwealth, 260 Va. 692, 695-96, 539 S.E.2d 77, 79 (2000) (the defendant was apprehended at the scene shortly after the crime, and the defendant even admitted that he had attacked and struggled with the victim); Dearing, 259 Va. at 124, 524 S.E.2d at 125 (the police apprehended the defendant, who matched the description given by the victim, shortly after the crime and found physical evidence on the defendant linking

him to the crime); Bass, 31 Va. App. at 391-92, 523 S.E.2d at

543 (in finding the remaining evidence to be overwhelming, we

relied heavily on the defendant's own confession).

In the present case, Cairns not only did not confess to the

alleged crimes, he denied the allegations.  In addition, no

physical evidence was introduced linking him to the crimes.[12]

Without Mrs. Cairns' statement, the Commonwealth's case rested

solely on the credibility of the parties' two daughters.[13]

Although their testimonies, even uncorroborated, may have been

sufficient to support the convictions, Fisher v. Commonwealth,

228 Va. 296, 299, 321 S.E.2d 202, 203-04 (1984), the test in a

harmless constitutional error analysis is not whether the

---

[12] The alleged videotapes were never found.

[13] Although the Commonwealth argues that the testimony of
two of WW's friends, JW and SS, corroborated the allegations
made by WW and NC, the events involving JW and SS were not the
basis of any of the charges against Cairns.  See Lilly, 258 Va.
at 552-53, 523 S.E.2d at 210 (the purported corroborating
evidence must relate to the critical issues).
    WW's friend, JW, a female, confirmed WW's and NC's
testimony that Cairns played "truth or dare" with the three
girls.  Following dares by Cairns, the three girls performed
various acts, such as, "streaking" outside, doing a "pole
dance," "French kiss[ing] each other," "licking mayonnaise off a
hot dog," "masturbat[ing] with a hot dog," and taking a cold
shower together.
    WW's friend, SS, a male, confirmed WW's and NC's testimony
that SS, WW, NC, Cairns and Cairns' wife participated in a game
of "truth or dare" together.  Based upon dares made by Cairns,
WW was naked the entire time, WW performed oral sex on SS, WW
had oral sex with Mrs. Cairns, and Mrs. Cairns had "sex" with
SS.  NC participated by getting naked and running around in a
circle, but refused to have "oral sex" with SS, so Cairns sent
her to her room.  WW was dared by Cairns, but refused to have
"sex" with SS.

remaining evidence is sufficient, but "'whether there is a

reasonable possibility that the evidence complained of might

have contributed to the conviction.'"  Williams v. Commonwealth,

32 Va. App. 395, 399-400, 528 S.E.2d 166, 168-69 (2000) (en

banc) (quoting Thompson v. Leeke, 756 F.2d 314, 316 (4th Cir.

1985)).

We find a reasonable possibility that the statement

influenced the verdict in this case.  Although Mrs. Cairns'

statement did not corroborate all of the details of her

daughters' testimonies, it cannot be said that the statement,

coming as it did from her, the accused's wife, played no role in

bolstering the girls' credibility and that it did not influence

the court's determination of guilt.  Lilly, 258 Va. at 553, 523

S.E.2d at 210 ("those statements, coming as they did, from

Lilly's brother undoubtedly carried weight with the jury").  In

Lilly, the Court held:

> [T]he issue is not the credibility of the
> witness, but rather the potential for harm
> caused by the erroneous admission of
> evidence which tends to support the jury's
> credibility determination.  In that context
> we must presume that such evidence had the
> potential to influence the jury into
> accepting the properly admitted evidence as
> more credible, and thus, to taint the jury's
> determination of the facts.

Lilly, 258 Va. at 553, 523 S.E.2d at 210.

Based on these reasons, we cannot say the error of

introducing the codefendant's statement in this case was

harmless beyond a reasonable doubt.  We reverse the convictions

and remand for a new trial if the Commonwealth be so disposed.

<u>Reversed and remanded</u>.