# Richmond

## James E. Dalton v. Ann M. Johnson, Administratrix, Etc.

March 4, 1963.

Record No. 5514.

Present, All the Justices.

The opinion states the case.

*Emanuel Emroch* and *Jay G. Kauffman* (*Frank N. Cowan*, on brief), for the plaintiff in error.

*Glen M. Williams*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ Dalton filed a motion for judgment in the circuit court seeking damages for injuries sustained in an automobile accident which occurred on August 12, 1959. The suit was filed on September 3, 1960, at which time Dr. Johnson, who caused the accident, was deceased, and his wife, Ann M. Johnson, had qualified as administratrix of his estate.

The administratrix filed grounds of defense admitting that her decedent was negligent and was liable to the plaintiff but asserted that the limit of such liability was $2,500, which amount was duly tendered. Thereupon Dalton amended his motion for judgment so as to include punitive damages, and on May 5, 1961, he again amended the motion alleging that in addition to his other injuries he also suffered a spinal injury. In this motion he increased his *ad damnum* clause from $50,000 to $100,000.

The defendant administratrix filed amended grounds of defense wherein she asserted that if Dalton had any brain injury, such had existed since 1955, and she further asserted "that any trouble the plaintiff is now having with his knee was caused by an accident which occurred on June 10, 1960, at which time he fell off a dump truck, and for which he was paid compensation."

The court sustained the motion of the defendant to strike the amendment to plaintiff's motion for judgment pertaining to punitive damages. Plaintiff moved to strike the amended grounds of defense, which motion was overruled.

A jury was impanelled to hear the case and returned a verdict for the plaintiff in the sum of $5,000; whereupon plaintiff moved the court for a new trial on several grounds, including the action of the court in permitting the defendant to introduce certain hospital records, and also on the ground that the verdict was inadequate. The motion was overruled and judgment was entered on the verdict. We granted Dalton a writ of error.

There are eight assignments of error which plaintiff says resolve themselves into five questions for decision. The first two questions posed by plaintiff are discussed together in his brief. They are:

"1. Did the court err in permitting the defendant to introduce into evidence hospital records covering the hospitalization of the plaintiff in 1941, 1955, 1956 and 1959?

"2. Did the court err in permitting counsel for the defendant to interrogate the plaintiff, the father of the plaintiff, and Dr. H. H. Howze as to the aunt of the plaintiff having suffered with epilepsy many years before?"

The question of the admissibility of hospital records in personal injury cases in Virginia has never been directly passed upon by this court.[1] However, we have adopted the modern Shopbook Rule, allowing in given cases the admission of verified regular entries without requiring proof of the original observers or record keepers, as a recognized exception to the hearsay rule. *duPont Co.* v. *Universal Moulded Prod.*, 191 Va. 525, 567, 568, 62 S. E. 2d 233, 252.

The question before us is whether or not the hospital records, especially the pertinent 1955 record, were admissible under the circumstances of this particular case. Here, the actions of Dalton both before and during the trial were such that had his medical history not been introduced in evidence the jury would have been completely misled. The question for the jury to decide was the extent of Dalton's injuries resulting from the accident of August 12, 1959.

It is disclosed that until about two weeks before the trial four doctors, the defendant, and defendant's counsel were led to believe that Dalton was in perfect health until he was injured in the accident involved; that he had had no illness or injuries after 1959; that as a result of a blow to the head received in the 1959 accident he was unconscious for twelve or fourteen hours and was paralyzed for three days.

Without other evidence the jury could have concluded that all of

---

[1] Cf. *Kissinger* v. *Frankhouser*, 308 F. 2d 348 (1962); *Thomas* v. *Hogan*, 308 F. 2d 355 (1962).

plaintiff's injuries had resulted from this accident; that if he had epilepsy it was logical to assume it came from the blow to the head alleged to have been sustained in the accident, and that a doctor might properly conclude that this was the probable cause of the alleged epilepsy. Shortly before the trial the defendant discovered that the plaintiff had been injured in a second accident which occurred in June, 1960; and also had been hospitalized in 1955.

It appears that defendant and defendant's counsel were denied access to the record of the 1955 hospitalization and did not see this record until the date of trial when it was brought into court under a subpoena *duces tecum.* The only information the defendant had as to the plaintiff's hospitalization in 1955 was that the plaintiff was treated by a Dr. Martin who was a resident physician at St. Mary's Hospital. Dr. Martin had moved his residence and could not be located. He was traced to Wisconsin and to North Dakota, and from there no one knew where he went.

Prior to the admission of the hospital record (which was clearly available to plaintiff), plaintiff's attorney, in cross-examining Dr. Howze, made it appear to the jury that the record was favorable to the plaintiff, thus making it necessary, in order to assure a fair trial, that the record be introduced.

Also prior to the admission of the record Dalton's father confirmed the statement that his sister had epilepsy, and admitted that his son "fainted" in 1955, adding "but in 1955 he was just harmless when he fainted."

The trial court, in dealing with the admission of the record, had this to say:

"There is a conflict of authority as to the admissibility of hospital records but the majority rule appears to be that they should be admitted where a proper foundation is laid and the need to do so, as an exception to the hearsay rule, becomes apparent. This record was properly identified, was shown to have been made in the regular course of treatment of plaintiff and was introduced in evidence by the custodian. The entrant was absent from the jurisdiction of the court. The record was compiled long before the present controversy arose and it is difficult to conceive why the record should not be reliable. Prior to the time the record was admitted in evidence witnesses for the plaintiff had referred to the record in their testimony and plaintiff's counsel had elicited evidence from the witnesses from which an inference could have been drawn that the record was

favorable to the plaintiff. The contents of the record were practically covered by testimony of witnesses without objection by plaintiff. * * * It is my opinion that the hospital record was properly admitted in evidence."

Under the facts and circumstances of this case we hold that a proper foundation was laid for the introduction of the hospital records and that they were properly admitted in evidence in order to refute the claim of the plaintiff that all of the injuries sued for resulted from the 1959 accident.

The overwhelming evidence is to the effect that Dalton's only injury in this accident was to his knee; that he did not have a blow on the head, and was never unconscious as a result of the accident. There were no objective findings of epilepsy and Dr. Robson, the only doctor who testified regarding epilepsy, did so on an incomplete and inaccurate medical history. He stated that he based his findings on the history submitted; that if it was not a true history then his findings were inaccurate.

There was ample evidence for the jury to find that plaintiff failed to prove that the 1959 accident caused the alleged epilepsy.

Regarding Question 2, posed by plaintiff, as to whether or not the court erred in permitting counsel to question plaintiff, plaintiff's father, and Dr. Howze concerning the aunt's epilepsy, none of these questions was objected to in the trial and cannot be considered on appeal.

Questions 3 and 4, posed by plaintiff, are treated together. They are:

"3. Did the court err in overruling the motion of the plaintiff to set aside the verdict of the jury on the grounds that the said verdict was inadequate under all of the evidence in the case?

"4. Did the court err in refusing to set aside the verdict of the jury on the grounds that it was contrary to the law and the evidence?"

These questions relate to the alleged inadequacy of the verdict. We are here dealing with a suit for personal injuries resulting from the accident which occurred on August 12, 1959. The record is replete with evidence that Dalton was not in good health prior to the accident, and it is proved without contradiction that after this accident and prior to the date of trial, he was injured in another accident when he fell off a dump truck in June, 1960.

These facts bring into play the familiar rule that if an injury may result from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable cer-

tainty that the cause for which the defendant was liable produced the result which may have followed. 20 Am. Jur., Evidence, § 146, page 150.

There was ample evidence to show that the only injury received by the plaintiff in the accident here involved was the injury to his knee. It is undisputed that his left knee was injured, and it is clear that the defendant was liable in damages for medical expenses, loss of wages, and pain and suffering incidental to the removal of the medial meniscus cartilage in the knee. The evidence disclosed that the injury to the knee was not permanently disabling; that the operation was successful; that the medical expenses as a result of this injury did not exceed $980; that the loss of wages during the period of total incapacity as a result of the injury would be approximately $800. The verdict of $5,000 indicates that the jury allowed plaintiff $3,220 for pain and suffering and possible future loss of earnings.

The Virginia rule on this subject is well stated in *Rawle* v. *McIlhenny* (1934), 163 Va. 735, 744, 177 S. E. 214, that a jury verdict will not be disturbed in a case of physical injury because the verdict is too large or too small, unless in the light of all the evidence it is manifestly so inadequate or so excessive as to show plainly that the verdict has resulted from one or both of two causes: (1) the misconduct of the jury, or (2) the jury's misconception of the merits of the case insofar as they relate to the amount of damages. This rule has been reiterated many times by our Court. 5 Mich. Jur., Damages, § 56, page 547 (1962 Cumulative Supplement); *Dinwiddie* v. *Hamilton*, 201 Va. 348, 352, 111 S. E. 2d 275, 277, 278.

We cannot say that the verdict was inadequate.

The final question posed by plaintiff is:

"5. Did the court err in sustaining the motion of the defendant to strike out that part of the plaintiff's amended motion for judgment pertaining to exemplary damages?"

Dr. Johnson, the party who caused the injuries to plaintiff, was deceased at the time of trial, and since exemplary or punitive damages are awarded not by way of compensation to the sufferer but by way of punishment to the offender, such damages can only be awarded against the one who has participated in the offense. *Hogg* v. *Plant*, 145 Va. 175, 133 S. E. 759, 47 A.L.R. 308; 15 Am. Jur., Damages, § 285, page 728; 5 Mich. Jur., Damages, § 70, page 560; 38 Virginia Law Review 71.

We see no reversible error in the record and the judgment is

*Affirmed.*