COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


TIMOTHY J. PARKER, S/K/A
 TIMOTHY JEROME PARKER
                                                    OPINION BY
v.       Record No. 2017-02-2                JUDGE LARRY G. ELDER
                                               NOVEMBER 4, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                        Paul M. Peatross, Jr., Judge

           (Michael T. Hemenway, on brief), for appellant.  Appellant
           submitting on brief.

           Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
           Attorney General, on brief), for appellee.


       Timothy J. Parker (appellant) appeals from his jury trial conviction for maliciously

causing bodily injury in violation of Code § 18.2-51.  On appeal, appellant contends the

admission of hospital records under the business records exception to Virginia's hearsay rule

violated his rights under the Sixth Amendment's Confrontation Clause because the records

included his report of how he sustained the injuries for which he was treated.  We hold the trial

court's admission of the records was not error and affirm.

                                          I.

                                     BACKGROUND

       In December of 1999 or January of 2000, appellant's brother, Anthony Parker (Parker),

"had an altercation" with the victim while playing basketball in an athletic club.  The victim

feared for his safety but departed without sustaining any injuries.

The victim next saw Parker on September 10, 2000, at about 2:00 p.m., when the victim and two friends, Anthony Agee and William White, went to a different location, "the Dell," to play basketball. The victim recognized Parker but did not know appellant. Everyone but appellant began to play a "pick-up game" of basketball. Appellant stood behind the basketball rim holding a glass bottle.

Two to three minutes into the game, someone hit the victim on the head from behind, cutting his head and neck. The victim "wasn't sure who had hit [him] or what [he] got hit with," but he "knew it was something that shattered." The victim "knew [Parker] wasn't the one that hit me . . . because I could see him [in front of me]. So I knew obviously there was someone else . . . ."

Agee, whose attention had been focused on the game and away from the victim, "heard a sudden crash or break of glass." Agee immediately turned around and saw Parker and appellant "surrounding" the victim, whose head and neck were bleeding. Parker was in front of the victim, and appellant was behind the victim. No one else was nearby.

After the victim was hit from behind, Parker said something like, "[Y]ou thought I forgot about that shit, didn't you?" Agee and White immediately went to the victim to separate him from Parker and appellant. Agee noticed glass on the ground in the area of the attack. He also observed that appellant had a piece of glass "an inch or two" long "sticking out of his finger" "from the glass that was on the ground" on the basketball court. The victim confirmed that one of Parker's companions was holding his hand as he left the scene.

On September 13, 2000, Officer Michael A. Blakey went to the residence of Parker to serve an arrest warrant on him for the incident in question. There, Blakey encountered appellant, who answered the door with a "heavily bandaged" right hand. Appellant "denied any involvement" in the attack on the victim, saying that "he hurt his hand playing basketball at

Garrett Square with his kids" "on [Monday,] September the 11th" and that he received medical treatment at Martha Jefferson Hospital that same day.

Prior to trial, the Commonwealth subpoenaed appellant's medical records from Martha Jefferson Hospital. The records indicated that appellant received medical treatment there between 2:30 and 7:00 p.m. on September 10, 2000, rather than on September 11 as he had told Officer Blakey. Notes from that treatment indicate appellant reported to two nurses and a physician that he "[f]ell onto" or "put his hand down onto" broken "glass while playing basketball."

On the morning of trial, appellant moved to exclude the medical records on the ground that the Commonwealth's plan to offer the records into evidence deprived appellant of his rights under the Confrontation Clause. The Commonwealth averred that the purpose of the records was to show appellant sustained an injury consistent with the offense for which he was on trial. The trial court made a preliminary ruling denying the motion.

At trial, Clarissa W. Bell, the custodian of medical records at Martha Jefferson Hospital, testified regarding records of medical treatment appellant received on September 10, 2000. She testified the records were "kept in the normal course of business" and were "relied upon by the hospital in the course of its business." Appellant renewed his hearsay objection, stating, "We have no objection to [Ms. Bell's] being a proper custodian. It's really the Sixth Amendment . . . confrontation" argument because "I'm not able to cross-examine the individuals that apparently wrote these things." After the trial court overruled the objection and admitted the records, appellant argued the Commonwealth had to make a "showing of unavailability of the authors of the documents." The trial court responded, "Oh, I don't think that's a requirement of the business records exception. If you've got a custodian and they're kept in the ordinary course of business."

After the Commonwealth rested, appellant took the stand and denied striking the victim. He said that, during the scuffle, he heard a crash and saw glass on the court. He claimed that a piece of the glass stuck in his hand when he reached down to remove a piece that had become lodged in the sole of his shoe. Appellant admitted lying to the emergency room physician about how he sustained the injury because he was afraid for both himself and his brother.

The jury found appellant guilty of maliciously causing bodily injury as charged in the indictment.

II.

ANALYSIS

Appellant contends the trial court's admission of the hospital records under the business records exception to Virginia's hearsay rule violated his rights under the Sixth Amendment's Confrontation Clause because "I'm not able to cross-examine the individuals that apparently wrote these things or created the hearsay we're concerned about." He also contends the Commonwealth had to prove "the authors of the documents" were unavailable. The Commonwealth argues that the statements were not hearsay, that their admission did not violate the Confrontation Clause, and that, even if it did, the error was harmless. We hold that admission of the medical records containing appellant's statements was proper under a firmly rooted exception to Virginia's hearsay rule and, thus, did not violate the Confrontation Clause.

The challenged statements in appellant's medical records contain two potential levels of hearsay—first, appellant's statements to the various hospital staff members and, second, the staff members' recordings of those statements in the medical records. "[H]earsay evidence which contains hearsay should not be subject to an automatic rule of exclusion." West v. Commonwealth, 12 Va. App. 906, 909, 407 S.E.2d 22, 24 (1991). As long as "both the primary

hearsay declaration and each hearsay declaration included within it . . . conform to a recognized exception to the hearsay rule," those declarations are admissible. Id.

A.

APPELLANT'S STATEMENTS TO MEDICAL PERSONNEL

Appellant does not challenge the admissibility of the first level of potential hearsay, his statements to hospital personnel. We agree that those statements were properly admitted either because they were used for impeachment only and, thus, were not hearsay, see Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594-95 (1987), or because they were party admissions and, thus, were admissible under an exception to the hearsay rule, see Alatishe v. Commonwealth, 12 Va. App. 376, 378, 404 S.E.2d 81, 82 (1991).

B.

ADMISSION OF MEDICAL RECORDS UNDER CONFRONTATION CLAUSE

As to the second level hearsay issue, the medical records containing appellant's statements were admissible if they satisfied the requirements of the Confrontation Clause and the business records exception to Virginia's hearsay rule.

> The Confrontation Clause of the Sixth Amendment, which applies to the States, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses secured by the Sixth Amendment encompasses the right to cross-examine them. The right to confront and to cross-examine witnesses is a "functional right" that "advance[s] the pursuit of truth" and "promotes reliability" in criminal trials by "ensuring that convictions will not be based on the charges of unseen and unknown—and hence unchallengeable—individuals."

Rankins v. Commonwealth, 31 Va. App. 352, 364, 523 S.E.2d 524, 530 (2000) (quoting Lee v. Illinois, 476 U.S. 530, 540, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514 (1986)) (citations omitted). Under the Confrontation Clause, a hearsay statement of a declarant not present at trial is admissible "only if it bears adequate 'indicia of reliability.'" Ohio v. Roberts, 448 U.S. 56, 66,

- 5 -

100 S. Ct. 2531, 2539, 65 L. Ed. 2d 597 (1980). The United States Supreme Court consistently has held, for Confrontation Clause purposes,

> that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) "the evidence falls within a firmly rooted hearsay exception" or (2) it contains "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability.

Lilly v. Virginia, 527 U.S. 116, 124-25, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999) (plurality opinion) (quoting Roberts, 448 U.S. at 66, 100 S. Ct. at 2539).

The Supreme Court also has made clear "that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." White v. Illinois, 502 U.S. 346, 354, 112 S. Ct. 736, 741, 116 L. Ed. 2d 848 (1992) (emphasis added). "[I]f the challenged out-of-court statements were not made in the course of a prior judicial proceeding, the statements must only show 'indicia of reliability' to meet the requirements of the Confrontation Clause." State v. Sutherland, 939 S.W.2d 373, 378 (Mo. 1997) (citing White, 502 U.S. at 354, 112 S. Ct. at 741). The Court held in White that "establishing a generally applicable unavailability rule would have few practical benefits [beyond the reliability requirements already imposed by the Confrontation Clause]" and would "impos[e] pointless litigation costs" by requiring the prosecution "to repeatedly locate and keep continuously available each declarant, even when neither the prosecution nor the defense has any interest in calling the witness to the stand." White, 502 U.S. at 355, 357, 112 S. Ct. at 742, 743.

Thus, if the business records exception to Virginia's hearsay rule is a "firmly rooted hearsay exception" and the contested "evidence falls within [that] exception," admission of the hospital records did not violate the Confrontation Clause.

## 1. Requirements of Virginia's Business Records Exception

The business records exception to the hearsay rule

> allows introduction "into evidence of verified regular [business] entries without requiring proof from the original observers or record keepers." Neeley v. Johnson, 215 Va. 565, 571, 211 S.E.2d 100, 106 (1975). . . . "Admission of such evidence is conditioned . . . on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record." "Automatic" Sprinkler [Corp. of America v. Coley & Peterson, Inc., 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979)] . . . .

Sparks v. Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 70 (1997). We also have noted the exception requires proof that "the entrant is not available" for trial.[1] Tickel v. Commonwealth, 11 Va. App. 558, 565, 400 S.E.2d 534, 538 (1991).

Virginia's appellate courts have recognized that such unavailability may be actual or "commercial." Id. As the Supreme Court has implicitly acknowledged, application of the business records exception to the hearsay rule is appropriate based on commercial unavailability where "'the practical inconvenience of producing on the stand the numerous persons thus

---

[1] Professor Friend has opined that abolition of the unavailability requirement would do little harm to Virginia law:

> In theory, . . . there is a clear distinction between . . . the true "shopbook rule[," which] appl[ies] to the records of parties only and requir[es] no showing of "necessity" or "unavailability[," and] the more modern "business records rule[," which] appl[ies] to any regularly kept business record and requires at least a showing of "commercial" unavailability, i.e., inconvenience.
>     The Virginia courts have sometimes overlooked this distinction, with some attendant confusion in the cases. It is probable that the now-blurred distinction could be formally abolished, and the unavailability requirement abandoned, without greatly altering or affecting Virginia law, particularly in view of the weakening of the unavailability requirement by defining it to include inconvenience.

Charles E. Friend, The Law of Evidence in Virginia § 18-15, at 773 (6th ed. 2003) (footnotes omitted).

concerned [with creating the record] would in the particular case outweigh the probable utility of doing so.'" French v. Virginian Railway, 121 Va. 383, 386, 93 S.E. 585, 585 (1917) (quoting 2 Wigmore on Evidence § 1530); see Charles E. Friend, The Law of Evidence in Virginia § 18-15, at 772-73 (6th ed. 2003) (approving admission of hearsay evidence under the business records exception based on commercial unavailability "in any case in which delay, expense, or disruption of the business would result if the entrant[s were] summoned to court to testify"). Under these circumstances, the "absence" of the entrants need not be further "accounted for." French, 121 Va. at 388, 93 S.E. at 586.

### 2. "Firmly Rooted" Hearsay Exception

Whether an exception is "firmly rooted" depends at least in part on how long the exception has been recognized by the legislature or the courts. See Rankins, 31 Va. App. at 361 n.5, 523 S.E.2d at 528 n.5 (citing Lilly, 527 U.S. at 133-34, 119 S. Ct. at 1898-99); see also Idaho v. Wright, 497 U.S. 805, 817-18, 110 S. Ct. 3139, 3148, 111 L. Ed. 2d 638 (1990) (noting that codification of exception may be relevant to but is not dispositive of "firmly rooted" analysis). The business records exception to the hearsay rule has been a part of Virginia law since at least the Virginia Supreme Court's 1917 decision in French, 121 Va. 383, 93 S.E. 585.[2]

---

[2] French involved "entries, made in the established course of business, on train sheets, by [three different] train dispatchers, from reports telegraphed or telephoned to them by station agents as to the time of arrival and departure of trains." 121 Va. at 384, 93 S.E. at 585. The Supreme Court upheld the admission of that evidence to prove the location of a train at a certain time, based on the testimony of a claims adjuster, an employee of the company who had access to all the company's books and records. Id. at 385-87, 93 S.E. at 585-86. The Court emphasized the reliability of such records, noting

> The train sheets of a properly operated railroad must be accurately and properly kept by the train dispatchers, or else the lives and property of its passengers, the safety of its [employees], and its own property are all imperiled. Indeed, a railway cannot be operated unless the train dispatchers are kept informed as to the location and movements of its trains. Outside of the courtroom no one would

Virginia's appellate courts have applied the business records exception repeatedly since that time. <u>See, e.g.</u>, <u>White Sewing Mach. Co. v. Gilmore Furniture Co.</u>, 128 Va. 630, 645-47, 105 S.E. 134, 139-40 (1920); <u>E. I. Du Pont De Nemours & Co. v. Universal Moulded Prods. Corp.</u>, 191 Va. 525, 567-68, 62 S.E.2d 233, 252-53 (1950) (citing <u>French</u> and referring to rule as "modern Shopbook Rule"); <u>Dalton v. Johnson</u>, 204 Va. 102, 104-06, 129 S.E.2d 647, 648-50 (1963); <u>Neely v. Johnson</u>, 215 Va. 565, 570-72, 211 S.E.2d 100, 105-06 (1975); <u>Frye v. Commonwealth</u>, 231 Va. 370, 387, 345 S.E.2d 267, 279 (1986); <u>Kettler & Scott, Inc. v. Earth Tech. Cos.</u>, 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994); <u>Frank Shop, Inc. v. Crown Cent. Petroleum Corp.</u>, 261 Va. 169, 175-76, 540 S.E.2d 897, 901 (2001).

As the United States Supreme Court has recognized, where "'[p]roperly administered[,] the business . . . records exceptions would seem to be among the safest of the hearsay exceptions as the danger of inaccurate memory or narration on the part of the witness is virtually removed.'" <u>Roberts</u>, 448 U.S. at 66 n.8, 100 S. Ct. at 2539 n.8 (quoting Comment, <u>Hearsay, the Confrontation Guarantee and Related Problems</u>, 30 La. L. Rev. 651, 668 (1970)). We hold the business records exception to Virginia's hearsay rule is, in fact, a "firmly rooted" exception.[3]

---

question the value of these records, for no other practical method has been devised to prevent collisions.

<u>Id.</u> at 386-87, 93 S.E. at 586.

[3] Several United States Circuit Courts of Appeals have held that the federal business records exception is "firmly rooted." <u>See</u> <u>United States v. Kelly</u>, 892 F.2d 255, 262 n.4 (3d Cir. 1989); <u>United States v. Roulette</u>, 75 F.3d 418, 422 (8th Cir. 1996); <u>United States v. Norton</u>, 867 F.2d 1354, 1363 (11th Cir. 1989). Many states recognize the business records exception as one that is "firmly rooted" in their jurisprudence, as well. <u>See</u> <u>Brown v. State</u>, 485 S.E.2d 486, 489-90 (Ga. 1997); <u>Chapman v. State</u>, 628 A.2d 676, 681 n.3 (Md. Ct. App. 1993); <u>Hankins v. State</u>, 735 So. 2d 317, 320 (Miss. 1999); <u>Sutherland</u>, 939 S.W.2d at 378; <u>People v. James</u>, 717 N.E.2d 1052, 1065 (N.Y. 1999); <u>State v. Webb</u>, 638 N.E.2d 1023, 1032 (Ohio 1994); <u>State v. Brown</u>, 480 N.W.2d 761, 763 (S.D. 1992); <u>Hodgins v. State</u>, 962 P.2d 153, 157 (Wy. 1998).

### 3. Admission of Appellant's Hospital Records Under Exception

Virginia expressly permits the introduction of certain portions of medical records under the business records exception to its hearsay rule. See Dalton, 204 Va. at 104-06, 129 S.E.2d at 648-50 (admitting hospital records to show medical treatment injured party received prior to accident at issue); see also Neely, 215 Va. at 570-72, 211 S.E.2d at 105-06 (refusing to extend Dalton to hold opinions in medical records admissible under business records exception).

Appellant concedes the non-opinion portions of the emergency room records would have been admissible if the Commonwealth had laid a proper foundation. He agrees that Clarissa Bell was the proper custodian through whom the emergency room records could be introduced and argues that the records were improperly admitted solely because the Commonwealth failed to prove "the authors of the documents" were unavailable. We hold the evidence in the record established the authors' "commercial unavailability" as discussed in Part II.B.1. and, thus, supported the trial court's admission of the records into evidence.

The portions of the records to which appellant objects are the places in which three different members of the emergency room staff—one doctor and two nurses—recorded three similar reports from appellant regarding how he sustained the injuries for which he sought treatment. Just as was the case with the train records in French, the "[medical records] of a properly operated [hospital] must be accurately and properly kept by the [treating doctors and nurses], or else the lives . . . of its [patients] . . . are . . . imperiled." French, 121 Va. at 386-87, 93 S.E. at 586; see also 12 VAC 5-410-370 (requiring that every hospital licensed in state must establish and maintain medical record for every person treated and that content of record and who may make entries shall comply with written policies and procedures of hospital). Further, appellant's trial occurred almost eight months after he received the emergency room treatment at issue, reducing the likelihood that any of the emergency room staffers who recorded appellant's

statements would have an independent recollection of those statements. Under these circumstances, the evidence supported the trial court's implicit conclusion that "'the practical inconvenience of producing on the stand the numerous persons thus concerned [with creating the medical records] would in [this] particular case outweigh the probable utility of doing so.'" French, 121 Va. at 386, 93 S.E. at 585 (quoting Wigmore, supra, § 1530).

The trial court's statement that proof of unavailability was not a requirement of the business records exception "[i]f you've got a custodian and [the records are] kept in the ordinary course of business" does not compel a different result. Established precedent provides that,

> [a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts. . . . We will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.

Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Further, a "trial court's remark is not, in and of itself, 'the full context' simply because it represents the only point at which the court [expressly] addressed the issue [in dispute]." Bassett v. Commonwealth, 13 Va. App. 580, 583-84, 414 S.E.2d 419, 421 (1992) (applying Yarborough).

In light of these principles, coupled with the fact that the challenged entries were made by three different emergency room employees almost eight months prior to trial, we interpret the trial court's statement as its recognition of the fact that the proponent of the records need not prove actual unavailability because commercial unavailability is sufficient in a case such as this one, in which the evidence supports a finding that "'the practical inconvenience of producing'" the doctor and two nurses "'outweigh[ed] the probable utility of doing so.'" French, 121 Va. at 386, 93 S.E. at 585 (quoting Wigmore, supra, § 1530).

Finally, we note that appellant sought only to preclude the admission of the records into evidence. Although he could have attempted to call the entrants of the records as witnesses

himself, he did not claim unfair surprise when the Commonwealth provided him with the records on the day before trial. When the trial court ruled that the records were admissible, he did not request a continuance in order to attempt to secure the presence of one or more of the entrants for trial. See John Douglass, Confronting the Reluctant Accomplice, 101 Colum. L. Rev. 1797, 1847 (2001) discussing cases that note defendant's failure to call witness while simultaneously raising confrontation issue). Instead, "[h]e sought only suppression of the truth"—the fact that he lied to the emergency room doctor and nurses about how he got glass in his hand. See Lane v. Commonwealth, 20 Va. App. 592, 595, 459 S.E.2d 525, 527 (1995) (holding under Rule 3A:11(b)(1), which governs discovery in criminal cases, that defendant who objected to admission of evidence based on claim of surprise but failed to request recess or continuance sought "only suppression of the truth" and failed to establish prejudice).

III.

For these reasons, we hold the trial court's admission of the challenged medical records into evidence did not violate the Confrontation Clause, and we affirm appellant's conviction.

Affirmed.