COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and AtLee
Argued at Lexington, Virginia

CRISTIAN JOSE SANCHEZ GOMEZ, SOMETIMES KNOWN AS
  CRISTIAN JOSE SANCHEZ-GOMEZ

MEMORANDUM OPINION[*] BY
v.       Record No. 1493-22-3       JUDGE GLEN A. HUFF
                                    OCTOBER 10, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

(Neal A. Horn, on brief), for appellant. Appellant submitting on brief.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.

Under a written plea agreement, Cristian Jose Sanchez-Gomez ("appellant") pleaded no contest to first-degree murder and abduction. The trial court sentenced him to a total of 60 years' incarceration.[1] On appeal, appellant argues that the trial court erred by not informing him of its "personal rule" against reducing the low end of the sentencing guidelines' recommended range when a defendant pleads no contest instead of guilty. As a result, appellant asserts that his pleas were not entered freely and voluntarily. For the following reasons, this Court affirms the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Consistent with the plea agreement, the Commonwealth moved to amend a charge of aggravated murder to first-degree murder.

BACKGROUND

This Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Consistent with the written plea agreement, appellant pleaded no contest to charges of first-degree murder and abduction, in violation of Code §§ 18.2-32 and 18.2-47, respectively. He also pleaded guilty to one charge of gang participation, in violation of Code § 18.2-46.2. Before accepting his pleas, the trial court conducted a colloquy with appellant to ensure he was entering the pleas freely and voluntarily. During the colloquy, appellant confirmed that he had reviewed the plea agreement with his attorneys, "fully underst[oo]d all the elements" of the charged offenses, and signed the agreement, which stated that he had discussed the nature of the charges and possible defenses with his attorneys.

Appellant acknowledged that, by entering his pleas, he was waiving his rights to a jury trial, to confront the witnesses against him, to present evidence in his defense, and to appeal certain decisions of the trial court. He also affirmed his understanding that the plea agreement contained no promised sentence and so the trial court could impose a maximum of 2 life sentences plus 20 years' incarceration. After determining that appellant understood the entire plea agreement, the trial court offered appellant the opportunity to ask any questions. He asked none.

The Commonwealth proffered that in March 2017, appellant, Kevin Soto Bonilla, and two other men travelled from Maryland to Lynchburg, Virginia to meet Victor Rodas and Jose Coreas-Ventura, all of whom were associated with the "Sailors clique" of the MS-13 gang.

- 2 -

Appellant and his cohorts planned to abduct and kill Raymond Wood, a seventeen-year-old boy who lived in Lynchburg. As a "small time" marijuana distributor, Wood was an economic rival to the MS-13 gang and had allegedly "disrespected" Rodas and Coreas-Ventura. The gang members travelled to Wood's home, "forced" him into a car, and drove to a rural area. Wood, appellant, and most of the gang members exited the car. The men attacked Wood with a "large knife," leaving Wood with "a number of horrific injuries." A passerby drove upon the scene, interrupting the torture and causing all but one of the perpetrators to flee. Appellant received a promotion in the gang for his participation. Wood ultimately died from his injuries.

The Commonwealth agreed that appellant had "provided substantial assistance" by testifying against three of the other gang members involved with Wood's abduction and murder. Appellant continued to claim, however, that he had played only a "minor role." Appellant even alleged that he had been "forced into the gang . . . against his will" in El Salvador and trafficked to Maryland. Despite those claims, the Commonwealth proffered that had appellant's case gone to trial, two informants would have testified that appellant admitted to them that he had "a direct role in inflicting [the] injuries" Wood suffered.

The trial court accepted appellant's pleas and convicted him of first-degree murder, abduction, and gang participation. The discretionary sentencing guidelines recommended an incarceration range between 24 years, 11 months and 41 years, 6 months, with a midpoint of 33 years, 2 months. At his sentencing hearing, appellant argued that the trial court should reduce the low end of the sentencing guidelines to 12 years, 5 months, and 15 days' incarceration based on his cooperation with the Commonwealth's prosecution of the other gang members. The Commonwealth agreed that the guidelines should be adjusted based on appellant's assistance.

Following argument by counsel, the trial court pronounced appellant's sentence and commented: "[A]s a general principle[—]maybe I might at some point[—]but generally, I do not

- 3 -

check the box of accepting responsibility[, which would reduce the sentencing guidelines' range,] when someone pleads nolle contendere." The court explained it would not reduce the guidelines and would instead impose a sentence exceeding the guidelines. It then sentenced appellant to a total of 60 years' active incarceration and advised that it would have imposed more incarceration but for appellant's cooperation with the Commonwealth.

Five days after the sentencing hearing, appellant filed a written "objection to the trial court's sentence." He argued that the trial court unreasonably refused to reduce the low end of the sentencing guidelines. In addition, he argued that when he entered his pleas, the trial court had not advised him of its "rule" against reducing the guidelines when a defendant pleads no contest. Noting that pleas must be entered "voluntarily and intelligently," appellant argued that "[f]ailing to tell" him about the "rule" was "unfair and constitute[d] an abuse of the [c]ourt's discretion." Appellant's written objection to the sentence did not include a motion to withdraw his pleas or seek any other relief from the trial court.

ANALYSIS

On appeal, appellant argues that the trial court should have advised him at the plea hearing "of its personal rule" regarding sentencing for no contest pleas even where he provided substantial assistance to the Commonwealth. Appellant contends that, without knowing the court's "bright-line rule," he could not exercise "his fundamental right to make a knowing and voluntary plea." Appellant did not immediately object to the trial court's sentencing decision. And he admits that he never moved to withdraw his pleas. Nevertheless, he claims that he preserved his appellate argument through his written objection to the trial court's sentencing order. Alternatively, appellant asks this Court to consider his argument under Rule 5A:18's good cause and ends of justice exceptions.

Appellant did not properly preserve his argument for review because he never obtained a ruling on his objection. Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The rule aims to "afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010). Thus, a necessary corollary of the rule requires that appellant obtain a ruling on legal argument. *See id.* While appellant filed a later written objection to the "trial court's sentence" generally asserting that it was "unfair" for the trial court not to tell him about its alleged "personal rule" when he entered his pleas, the trial court never ruled one way or another on that argument. Nor did the written objection request any specific relief. *See Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993). "Because appellant did not obtain a ruling from the trial court" on the objection, "'there is no ruling for [this Court] to review' on appeal, and [appellant's] argument is waived under Rule 5A:18." *Williams*, 57 Va. App. at 347.

Notwithstanding the failure to preserve his argument, appellant asks this Court to consider the issue under Rule 5A:18's good cause and ends of justice exceptions. "'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted appellant's pleas on March 18, 2022, held the sentencing hearing on September 21, 2022, and entered final judgment on September 30, 2022. Thus, even after appellant learned of the trial court's alleged "personal rule," he had 21 days to move to withdraw his pleas but failed to do so. *See* Code § 19.2-296 (providing that "to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea"). Nothing in the record suggests that anything prevented appellant from filing such a motion. Accordingly, the good cause exception does not apply because appellant had ample opportunity to alert the trial court of the relief he sought. Moreover, there existed valid strategic reasons for not doing so considering the serious charge the Commonwealth had amended as a result of appellant's pleas.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

"In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,]

procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

Initially, although appellant contends that the trial court employed a "bright-line rule" that it never lowered the sentencing guidelines when a defendant pleads no contest, the trial court said no such thing. The court said that "maybe [it] might at some point" reduce the guidelines—but it would not in this case. This Court "will not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) (quoting *Bullock v. Commonwealth*, 48 Va. App. 359, 368 (2006)). Furthermore, a "trial court's remark is not, in and of itself, the full context simply because it represents the only point at which the court expressly addressed the issue in dispute." *Id.* (quoting *Parker v. Commonwealth*, 41 Va. App. 643, 656 (2003)).

Moreover, the record conclusively establishes that appellant entered his pleas freely, intelligently, and voluntarily with an understanding of their consequences and of the nature of the charges against him. Because a defendant who enters a guilty plea waives several rights, a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). For a guilty plea to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

To that end, "[a] circuit court shall not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of the nature of the charge and the consequences of the plea." Rule 3A:8(b)(1); *see also* Rule 7C:6; *Henderson v. Morgan*, 426

U.S. 637, 645 (1976) (holding that a defendant must receive "notice of the true nature of the charge against him" for a plea to be voluntary (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))). In addition, a defendant "must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). However, a "trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing." *Zigta v. Commonwealth*, 38 Va. App. 149, 154 (2002).

Before signing the plea agreement and entering his pleas, appellant discussed the charges and possible defenses with his attorney. He "fully underst[oo]d all the elements" of the offenses and the various constitutional rights he waived by entering his pleas. Importantly, he also acknowledged that there was no agreed sentence under the plea agreement. Therefore, appellant understood that, regardless of the guidelines' recommended range, and regardless of any expectation of how the trial court might adjust the guidelines, the court could sentence him to a maximum of two life sentences plus 20 years' incarceration under the express terms of the plea agreement.

No authority supports appellant's contention that, for his pleas to be voluntary, the trial court was required to inform him of its general thoughts about how the sentencing guidelines should be calculated and interpreted. Indeed, the sentencing guidelines are discretionary, not mandatory, and a trial court's failure to follow the guidelines is not reviewable on appeal. Code § 19.2-298.01(F). Given the record here, appellant entered his pleas knowingly, voluntarily, and intelligently. *Boykin*, 395 U.S. at 242. And the ends of justice exception does not apply because appellant has not met his burden of affirmatively showing that a manifest injustice occurred. Thus, this Court finds that appellant's arguments on appeal are barred by Rule 5A:18.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*