PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


LINDSEY NICOLE PERKINS

OPINION BY
v.      Record No. 1239-23-3      JUDGE DANIEL E. ORTIZ
SEPTEMBER 10, 2024

REBECCA LYNN (HICKS) HOWINGTON, ET AL.


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Jack S. Hurley, Jr., Judge

Tamara Neo (Tamara Neo, PLLC, on brief), for appellant.

(Felicia H. de Courcy; F. Gabrielle de Courcy; Penny E. Nimmo,
Guardian ad litem for the minor child; The de Courcy Law Firm, on
brief), for appellees. Appellees and Guardian ad litem submitting
on brief.


Lindsey Nicole Perkins ("mother") appeals the circuit court's order granting Justin Lee

Howington ("father") and Rebecca Lynn (Hicks) Howington's ("stepmother") petition to adopt

her child, J.H.[1] Mother argues that the circuit court erred in finding her consent to the adoption

was not required under Code § 63.2-1202(H). She claims that her consent was necessary

because father and stepmother failed to prove that mother, "without just cause," had "neither

visited nor contacted the child for a period of six months immediately prior to the filing of the

petition for adoption." Mother also asserts that the circuit court improperly considered her

probation records, which were not entered into evidence, when granting the adoption. Upon

review of the record, we find mother's lack of contact was without just cause and affirm the

circuit court's decision.

---

[1] We use initials to protect the child's privacy.

BACKGROUND[2]

In 2019, mother and father shared joint legal custody over their biological child, with mother having primary physical custody. On February 14, 2020, father married stepmother. In March, the Tazewell County Juvenile and Domestic Relations District Court ("J&DR district court") granted father temporary legal and physical custody. The child has resided with father and stepmother since. The J&DR district court also entered a preliminary child protective order against mother, limiting her to supervised visitation at the discretion of the Tazewell County Department of Social Services ("the Department"). It ordered mother to submit to random drug screenings and to refrain from alcohol and illegal drug use. The court's order pointed to mother's failure to "cooperate with [the Department's] investigation after reasonable attempts by [the Department]." Two months later, on May 4, 2020, the J&DR district court adjudicated the child as abused or neglected due to mother's substance abuse and awarded father legal and physical custody. After a June 15 hearing, the court entered a child protective order against mother, establishing a supervised visitation schedule for mother and requiring her to cooperate with the Department. The court also mandated that mother enroll with Clinch Valley Community Action ("CVCA") for random drug screenings.

On July 14, 2020, because of mother's non-compliance with the previous protective order's required drug screening, the J&DR district court entered a new child protective order, prohibiting mother from having any contact with the child until further order of the court. Mother's last visit with the child before the new order was on July 3, 2020. One month later, the court removed the matter from the docket because no motions for review, modification, or dissolution were filed.

---

[2] "[W]e review the evidence in the 'light most favorable' to the to the . . . prevailing party in the trial court." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

In October 2020, mother moved to amend the protective order and requested visitation; the motion was scheduled for a hearing on January 5, 2021. The matter was continued because mother was required to file a bill of particulars with the court by February 19, 2021. Mother failed to file the bill of particulars. On March 16, 2021, CVCA Community Safety Officer Shonda Wilson filed a letter with the J&DR district court. In the letter, she reported that, despite several attempts, she was unable to make contact with mother from October 2, 2020 until January 29, 2021—a total of three months and 27 days—for her court-ordered drug screenings. Wilson was only able to successfully speak to mother after contacting mother's probation officer. On March 18, 2021, the J&DR district court ordered mother to submit to random drug screens, appointed a guardian ad litem ("GAL") for the child, and ordered mother to cooperate in signing releases for the Department and the GAL. The J&DR district court continued the matter to April 15, 2021, "for the sole purpose of reviewing the request of mother to begin some type of visitation with the child."

Meanwhile, on April 13, 2021, stepmother and father petitioned to adopt the child in circuit court. They argued that mother's consent to the adoption was not required under Code § 63.2-1202(H) because of her lack of contact with the child for six months prior to their petition without just cause. And, in the alternative, they asserted that mother's consent to the adoption was being withheld contrary to the best interests of the child under Code § 63.2-1203.

On April 27, 2021, the J&DR district court dissolved the previous child protective order and entered a new one, permitting mother to have supervised contact with the child. Mother saw the child last on March 13, 2022. On March 30, 2022, when mother failed to appear for a hearing, the J&DR district court entered a new protective order, which prohibited mother from having any contact with the child until further order of the court.

After several continuances, the parties appeared before the circuit court to be heard on the petition for adoption on June 1, 2023.[3] Mother argued that due to circumstances beyond her control, such as her contracting COVID and her attorney's obligations during the General Assembly session, she was unable to have the hearing on her motion to amend during the requisite time frame. After hearing the evidence and arguments, the circuit court found that mother had not contacted the child for more than six months before the filing of the petition for adoption without just cause, so her consent was not required under Code § 63.2-1202(H). The circuit court ruled that the adoption was in the best interest of the child and granted the adoption. In its ruling from the bench, the court noted that mother's own actions led to both the protective order and her total unreachability for three and a half months. The court referenced mother's probation record,[4] which was not entered into evidence, on multiple occasions when discussing mother's unreachability from October 8 to January 29, 2021. The court also found that, although her counsel was excused because of his legislative obligations from hearings during that time, mother's COVID did not "have anything to do with [the] delay" and rather what concerned the court was the lack of contact with mother between October to January 2021.

On appeal, mother challenges the circuit court's interpretation of Code § 63.2-1202(H) and its finding that she acted without "just cause" in not visiting the child. Mother also argues

---

[3] Mother had been convicted of distribution and was incarcerated at the time of the hearing.

[4] "[W]e don't know what she was doing between October the 8th and January 29th, which is three-and-a-half months on top of . . . so, we get to January 29th, *probation* didn't even have contact with her." "I mean, she was out-of-pocket; she refused to respond to *probation* until January 29th." "Again, had she . . . gotten back in touch with *probation* before the end of that six month period . . . ." "[T]he [c]ourt cannot, in good conscious [sic], say that was with good cause . . . with her own actions of not even being in touch with *probation* for a period of three-and-a-half months." (Emphases added).

that the circuit court erred by referencing her probationary records, which were not part of the record, when it issued its ruling from the bench.

ANALYSIS

I. Standard of Review

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017) (alterations in original) (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 44 (2014)). "Adoption in Virginia is solely a creature of statute." *Berry v. Barnes*, 72 Va. App. 281, 287 (2020) (quoting *Sozio v. Thorpe*, 22 Va. App. 271, 274 (1996)), *aff'd*, 300 Va. 188 (2021). Thus, this Court "review[s] issues of statutory interpretation and a circuit court's application of a statute to its factual findings, de novo." *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 635 (2020). Even so, a circuit court's factual findings will not be disturbed on appeal "unless plainly wrong or without evidence to support them." *Welch*, 64 Va. App. at 44 (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

II. Mother's Lack of Just Cause Under Code § 63.2-1202(H)

"We consistently have held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." *Copeland v. Todd*, 282 Va. 183, 197 (2011). In this case, the circuit court approved the adoption because mother, without just cause, lacked contact with the child for six months prior to the filing of the adoption petition and because the adoption was in the best interest of the child.

Code § 63.2-1201 lays out the procedure for a birth parent's new marriage partner to become a child's legally recognized parent. The partner first files a petition, and the birth parent

- 5 -

"shall unite in the petition for the purpose of indicating consent." *Id.* The other birth parent must also provide written consent to the adoption. But under several circumstances, the other parent's consent is not required. The exception relevant to this appeal is found in Code § 63.2-1202(H).

Code § 63.2-1202(H) states that an adoption may proceed without a birth parent's consent when the prospective adoptive parent proves by clear and convincing evidence that the biological parent "without just cause, has neither visited nor contacted the child for a period of six months prior to the filing of the petition for adoption." "Just cause" has yet to be defined by Virginia courts in relation to Code § 63.2-1202(H). *See Lester v. Lester*, No. 2061-13-3, slip op. at 3 (Va. Ct. App. Apr. 1, 2014) (failing to define "just cause," but finding that father had not seen the child since 2010 and that his incarceration was not just cause for why he had not visited his son because "father had not seen the child for more than six months *prior* to his incarceration, and once he was incarcerated, father did not make any effort to contact the child"). As it is used in a variety of contexts and often depends on the particular surrounding circumstances, "just cause" proves difficult to define with precision. For example, in the contract context, "just cause" or "good cause" "must be a fair and honest cause or reason." *Quick v. S. Churchman Co.*, 171 Va. 403, 417 (1938). Alternatively, Black's Law Dictionary defines it as a "legally sufficient reason." *Good Cause*, *Black's Law Dictionary* (12th ed. 2024). Other states, with similar statutory provisions relating to the exceptions to biological parent consent requirements for adoptions have also used and defined the term "without just cause." *See* Ariz. Rev. Stat. §§ 8-531, 8-5.33(B)(1) (LexisNexis 2024) (terminating a parent's rights based on abandonment, where a "failure to maintain a normal parental relationship with the child without just cause for a period of six months" constitutes prima facie evidence of abandonment); Idaho Code §§ 16-2002, 16-2005(1)(a) (2024) (abandonment is a statutory basis for termination, where a

"[f]ailure of the parent to maintain [a normal parental] relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment"); La. Child. Code Ann. Art. 1245 (2024) ("The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months."); Or. Rev. Stat. § 109.324(2) (2024) ("[I]f the court finds that the parent has willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of the parent at the discretion of the court is not required and, if the court determines that the parent's consent is not required, the court may proceed regardless of the objection of the parent."); Ark. Code Ann. § 9-9-207 (2024) ("Consent to adoption is not required of . . . a parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child.").

In the absence of Virginia precedent defining "just cause" in the adoption context, we now choose to adopt the definition provided by other jurisdictions with similar statutory schemes. Hence, "[t]o constitute 'just cause,' a parent's failure to visit or communicate must be due to factors *beyond* [*her*] *control*." *Adoption of Dore*, 469 So. 2d 491, 494 (La. App. 3d Cir. 1985) (emphasis added).

Here, the issue on appeal is not whether six months have passed—mother concedes this point. Rather, mother argues that stepmother and father failed to prove by clear and convincing evidence the absence of just cause for her failure to contact the child. Mother argues that according to the July 10, 2020 protective order, she was not allowed to have contact with the child, and the hearing for her motion to amend the order was continued "through no fault of her own." In support of her argument, mother points to her COVID quarantine, her attorney's legislative commitments, and "seeming efforts by DSS to thwart her chances to have a hearing."

- 7 -

We conclude that because mother's own actions led to the July 14 protective order, her failure to contact the child was without just cause.[5] The J&DR district court found that mother had not complied with the June 15 protective order, specifically referencing her failure to comply with court-ordered drug screenings. Based on this, the new order required mother to have no contact with the child. Further, though the order was set for review on August 18, because mother did not file motions for review, modification, or dissolution, the court ended the matter on the docket. Thus, mother's lack of contact was not caused by circumstances "beyond [her] control," but rather exclusively by her own conduct. *See Adoption of Dore*, 469 So. 2d at 494. Had it not been for mother's lack of compliance with the previous June 15 protective order, the July 14 protective order would not have been necessary, and she would have maintained supervised visitation with the child. Seeing as "[a]ppellate courts have an obligation to decide cases on the best and narrowest grounds available," *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022), we need not reach mother's arguments as to why her motion to amend was continuously pushed back for reasons beyond her control. Instead, we find mother's own action caused the protective order, and thus her failure to contact the child for a period of six months prior to the adoption petition was without just cause under Code § 63.2-1202(H).

We note that, though the circuit court found that mother's consent was not required under Code § 63.2-1202(H), the adoption proceeding did not end there. The court then reviewed the

---

[5] Here, the circuit court was not convinced by mother's purported reasons as to why her protective order modification hearing was continually postponed. We will not disturb the court's judgment on the matter but note that in other instances, an issuance of a protective order does not automatically lead to a parent's rights being terminated under Code § 63.2-1202(H). Instead, a parent seeking to reinstate contact with their child always has the opportunity to seek to modify their protective order.

Further, the issue of whether or not a parent's incarceration, commitment, or detention precludes them from invoking the "just cause" provision is not before us. But there are a variety of ways a parent may maintain contact within the meaning of Code § 63.2-1202(H) even in those circumstances, such as visitation and correspondence.

- 8 -

totality of the facts as they existed at the time of the hearing in determining whether the adoption was in the best interests of the child. *See* Code § 63.2-1213 ("[I]f the circuit court is satisfied that the best interests of the child will be served thereby, the circuit court shall enter the final order of adoption."); *see, e.g.*, *Chaphe v. Skeens*, 80 Va. App. 556, 567 (2024) (finding "the record is clear that . . . the court did not just evaluate the children's best interests in a vacuum; it considered the totality of father's circumstances, including his criminal history, lack of stability, and inability to assume immediate custody"). Mother had both the right and opportunity to dispute whether the adoption was in the child's best interests, even after the court found that her consent was not required. In spite of this, following the hearing, the circuit court was satisfied that the best interest of the child would be served by the adoption and granted the petition. We decline to disturb the circuit court's judgments on the matter.

In sum, the circuit court did not err in finding that mother's consent was not required under Code § 63.2-1202(H). Her own actions, which were in no way beyond her control, led to the July 14 protective order, preventing her from having contact with the child. This is not "just cause" under the statute, and the court's judgment withstands review.

### III. Mother's Probation Records

Mother next argues that the circuit court erred by improperly considering her probation records when they were not a part of the proceeding's record. In a ruling from the bench, the court stated:

> What does concern the [c]ourt is that we went from that day in October, despite many efforts trying to contact Ms. Perkins and not able to do so until January of 2021, and then, she arrived and her drugs screens were negative, but, we don't know what she was doing between October the 8th and January 29th, which is three-and-a-half months on top of . . . so, we get to January 29th, *probation* didn't even have contact with her, so as of January the 3rd, we reached the six month period.

- 9 -

(Emphasis added). Mother contends that the court's reference to her lack of contact with probation was an improper consideration. She argues that because neither party introduced her probation record into evidence, "the judge denied [her] a right to be heard on or contest the contents of the document."

`      The court referred to mother's "probation" four times in its oral ruling. But "this Court may not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" *Bassett v. Commonwealth*, 13 Va. App. 580, 583 (1992) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977)). Moreover, the circuit court's remarks referring to probation are not "'the full context' simply because [they] represent[] the only point at which the court [expressly] addressed the issue [in dispute]." *Parker v. Commonwealth*, 41 Va. App. 643, 656 (2003) (third and fourth alterations in original) (quoting *Bassett*, 13 Va. App. at 583-84), *overruled in part on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Rather, the entire circuit court's oral ruling and the final order provide the full context in which to read the court's references to probation. Taking a look at the oral ruling in its entirety, we can see that the court misspoke and was intending to refer to mother's issues in staying in contact with her CVCA Safety Officer. Although neither party attempted to enter mother's probation record into evidence, and although mother's probation record was never before the circuit court to review, each time the court used the term "probation," it was in reference to the three-and-a-half month period between October 8, 2020, and January 29, 2021. That window of time was discussed in the CVCA letter submitted to the J&DR district court, which the court accepted as evidence on March 16, 2021. The CVCA letter stated Wilson's attempted contact with mother was unsuccessful between October 8, 2020, to January 29, 2021 and contact only resumed once Wilson reached out to mother's *probation officer*. The record shows that during the juvenile adjudications, mother was required to submit

to drug screenings through her probation in 2020. And then in accordance with the June 15, 2020 child protective order, mother was mandated to enroll with CVCA for random drug screenings. The subsequent orders all required drug screening through CVCA. But the March 18, 2021 order also required mother to continue to communicate with her probation officer.

It is clear from this context that the circuit court misspoke, intending not to refer to mother's probation, but instead to refer to the CVCA letter that showed mother was not reachable for drug screening for almost four months. *See, e.g.*, *Nelson v. Commonwealth*, 12 Va. App. 835, 838 (1991) (concluding that the circuit court "misspoke" regarding the length of the defendant's sentence and did not intend to impose a more lenient penalty); *Thompson v. Commonwealth*, No. 1161-21-4, slip op. at 5 (Va. Ct. App. July 19, 2022) (finding that the "circumstances demonstrate that the circuit court was aware of Thompson's correct criminal history and simply misspoke while rendering judgment"). Additionally, the final written order of adoption makes no reference to mother's lack of contact with probation, and it is well settled that a "[circuit] court speaks only through its written orders." *Davis v. Mullins*, 251 Va. 141, 148 (1996).

Without evidence to the contrary, we will not presume that the circuit court purposefully considered the probation record in finding mother's consent unnecessary.[6] The court misspoke in referring to probation and did not actually consider facts outside the record. And thus, it did not impermissibly rely on mother's probation record in its judgment.

---

[6] "Courts are presumed to act in accordance with the law, and orders of the court are entitled to a presumption of regularity." *Napert v. Napert*, 261 Va. 45, 47 (2001).

- 11 -

CONCLUSION

Because the circuit court properly found mother's lack of contact with the child to be without just cause, her consent to the adoption was not required under Code § 63.2-1202(H). Further, the court did not commit reversible error in referring to mother's probation records in its final judgment. For these reasons, we affirm the circuit court's decision to grant the petition for adoption.

*Affirmed.*